SHEPARDSON vs. ELMORE and another.

Under a covenant by lessees of lots in the city of Milwaukee, to pay all taxes and assessments which should be levied or assessed on the lots during their term, at the times when the same should properly be due and payable, they were bound to pay a special tax assessed against the land for the amount of a street commissioner's certificate of work done in paving the street and curbing and planking the sidewalk in front of said lots, although said work was done *before* the commencement of their term, the certificate having been issued and the amount thereof inserted in the assessment roll *during* the term.

Where such lessees permitted the lots to be sold for the non-payment of such assessment, and, after the expiration of their term, became assignees of the certificates of sale, and took a deed of the lots in pursuance of such sale, the lessor was entitled (in an action for that purpose) to a judgment that they quit-claim the premises to him and be restrained from encumbering or disposing of the same, or bringing ejectment for them.

It was not necessary, in such action, for the lessor to prove his title to the lots, the action being based upon the defendants' violation of their covenant, and they being estopped from denying the lessor's title and right of possession.

APPEAL from the County Court of *Milwaukee* County.

The plaintiff in this action asked for judgment that the defendants execute to him a quit-claim deed of certain lands, and be restrained from encumbering or disposing of the same, or bringing suit to recover possession thereof; and for general relief. On the 16th of February, 1857, the parties herein executed an indenture, whereby the plaintiff demised to the defendants the land in controversy (consisting of four lots in the city of Milwaukee, upon which was a warehouse), for a term of five years from the 1st of August of the same year; and the defendants covenanted, among other things, " to pay all

taxes and assessments levied or assessed [on said premises] during said term, at the time the same [should be] properly due and payable, and before any costs [should] accrue on said taxes or assessments by reason of the non-payment of the same." Defendants entered under the lease, and occupied for the full term. Sometime before the commencement of said term, an estimate and specifications of work to be done in paving the street and planking and curbing the sidewalk in front of two of said lots, were made by the city engineer and filed in the comptroller's office; and on the 14th of June, 1857, the street commissioners of the proper ward caused a notice to be duly published to the owners and occupants of certain lots, including said two lots above referred to, requiring them to pave the streets and curb and plank the sidewalks in front of such lots respectively, in accordance with the plans and specifications on file in the comptroller's office, and notifying them that unless said work should be completed within twenty-one days from the 15th of said month of June, said commissioners would cause the work to be done at the expense of the lots, &c. The work in front of said lots not having been done within the time so limited, the street commissioners duly let the contract for the same, July 18th, 1857; and the work in front of plaintiff's lots was all done before said 1st of August, 1857; and the street commissioner's certificates of the same were issued under date December 24th, 1857, and countersigned by the city comptroller January 7th, 1858. The amount mentioned in the certificates having been assessed against the lots, they were severally sold for the amount of such assessment, April 22d, 1859, to the city of Milwaukee, and by it assigned to the defendants, and a deed of the premises was issued to them June 17th, 1864.

The complaint alleges possession of the premises and legal title thereto in the plaintiff at the date of the lease. The answer admits the execution of the lease, but denies generally all the other allegations of the complaint, and denies specially

that the defendants were bound to pay the special tax above mentioned. The county court rendered judgment for the plaintiff; and the defendant appealed.

*Martin & Hofer*, for appellants, argued that the judgment should be reversed because the plaintiff did not offer to prove, and the court did not find, that he had title to the land. The relation of landlord and tenant had ceased to exist between the parties when the defendants acquired title; and the rule that a tenant cannot question the title of his landlord applies only to cases where that relation still exists. But a tenant who, subsequent to the demise, acquires the title of his lessor, can set that up against him. *Nellis v. Lathrop*, 22 Wend., 121. 2. By sec. 3, ch. 7 of the charter of Milwaukee, the street commissioners have power "to order and contract for the making, grading, repairing and cleansing of streets, alleys," &c., &c. By section 5 the expense of "opening, gravelling, grading, planking or paving streets and alleys to the center thereof," is made "chargeable to and payable by the lots fronting on such street or alley." Sections 6 and 10 are as follows: "Sec. 6. Whenever the commissioners shall determine to make any public improvement, as authorized by sections 3, 4 and 5 of this chapter, they shall cause to be made an estimate of the whole expense thereof, *and of the proportion to be assessed and charged to each lot*, and in case of grading streets, alleys or side walks, of the number of cubic yards to be filled in or to be excavated in front of each lot; and such estimate shall be filed with the city comptroller for the inspection of the parties interested. The street commissioners shall give notice, by advertisement for ten days in one or more daily papers published in Milwaukee, to the owners or occupants of the lots or parcels of land fronting on any street, alley or side walk, ordered to be graded, graveled, planked or paved, requiring them to do the work mentioned in such notice within a reasonable time therein to be specified; and if the said work shall not be done within such time, the said

commissioners shall enter into contract for the doing thereof."
" Sec. 10.   After the completion and performance of any
contract entered into by the street commissioners for work
chargeable to lots or lands by virtue of this act, they
shall give to the contractor or contractors a certificate un-
der their hand, stating therein the amount of work done by
such contractor, the nature thereof, and the description of the
lot or parcel of land upon which the same is chargeable, which
said certificate may be transferred by indorsement thereon,
and if the amount thereof shall not be paid before the time of
making out the annual assessment roll, the same shall be as-
sessed upon the said lots or parcels of land respectively, and
collected for the use and benefit of the holder of such certifi-
cate, as other taxes on real estate are collected by virtue of
this act ; and if the notice to do the work required shall have
been given as herein provided, no informality or error in the
proceedings shall vitiate such assessment : *Provided*, that in no
event, when work is ordered to be done at the expense of any
lot or parcel of land, shall either the city or any ward be held
responsible for the payment thereof."   Thus making the work
done payable exclusively out of the property adjoining.   Sec.
1 of an act entitled " An act to make street commissioners'
certificates in the city of Milwaukee a lien upon the lots or
lands against which they may issue," makes all certificates
issued under and by virtue of any of the provisions of chap-
ter 7 of the act before referred to, a lien " from and after the
time when said certificates shall be countersigned by the city
comptroller."   Sec. 6 of chapter 8 of the city charter makes
all taxes and assessments (general or special) levied under this
act, a lien upon the lands and tenements upon which they may
be assessed, from the time of the confirmation of the assess-
ment roll, as provided in said act.   Upon these provisions ta-
ken in connection with the facts of this case, counsel contend-
ed that the expense of paving the street and planking and
curbing the sidewalk in front of the lots in question, which

were completed before the commencement of defendants' term, became a charge upon the lots and "properly due and payable" before the term commenced, and defendants therefore were not liable to pay the same. Counsel also argued that the amount so chargeable upon the lots was ascertained, determined, or *assessed*, as soon as the estimate mentioned in section 6, chapter 7 of the charter (above quoted) was filed, and the owners or occupants notified to do the work. Thus in sec. 7, ch. 7 of the charter, it is provided that "whenever the general interest of the city or ward requires deep cutting or extraordinary filling in any street, and the owners of the lots or lands fronting on such deep cutting shall deem themselves aggrieved thereby, and shall represent to the commissioners, in writing, that the expense of such excavation or filling will exceed the benefit the same will be to the property *assessed* therefor, five freeholders shall be summoned," &c. The same section provides that this remonstrance of the lot owner can only be received within fifteen days after the first publication of notice to such owner to do the work. It is clear, therefore, that the legislature regarded the property as *assessed* for its portion of the expense of any such improvement from the time when the engineer's estimate should be filed, and the order made and published.

*Peter Yates*, for respondent.

*By the Court*, DIXON, C. J. We have read and considered the argument of the counsel for the defendants. We cannot agree with them. Turn the facts and reason upon them as we may, there was no lien or assessment before the commencement of the term. The lien accrued and the assessment was made during the term; and the language of the covenant was, that the defendants were "to pay all taxes and assessments levied or assessed thereon during said term." Suppose the improvements had been ordered and made during the last two months of the term, and the certificates issued and assessment made

as now, but after the expiration of the term, who then would have been liable to discharge the taxes? We think clearly the plaintiff. He would have been liable because the assessment was not made during the term. The defendants are now liable because it was.

To the objection that the plaintiff gave no proof of title or possession, our answer is, that the action is not in strictness to quiet or remove a cloud from the title. It is more in the nature of an action upon the covenant, and to enforce an obligation assumed by the defendants as lessees. The action being founded upon the covenant, and proceeding upon the obligation of the defendants to pay the taxes, it can make no difference that the defendants took the deed after the expiration of the term. They are as much estopped from denying the plaintiff's title and right of possession as if they had received the deed during the term. The controversy originates in a violation by the defendants of one of the conditions of the lease, and they cannot avoid the estoppel by showing that the mischief of which the plaintiff complains was consummated in part after the expiration of the term.

The judgment of the county court is affirmed.