AMANDA OPPENHEIMER et al. *vs.* JACOB LEVI.

*Purchase of Demised Property by Tenant at a Tax Sale—Bill to Remove Cloud Upon Title by Owner of the Reversion.*

When a tenant has covenanted to pay the taxes on the demised property but neglects so to do and the property is sold for taxes, the tenant cannot by becoming the purchaser at the tax sale acquire a title valid as against his landlord, but he holds such tax title in trust for his landlord

The owner of the reversion in land, although not in possesion, may maintain a bill in equity to remove the cloud upon his title arising from a purchase by the tenant of the fee in the land when sold for non- payment of taxes which the tenant neglected to pay according to his covenant, when such purchase was a fraud upon the landlord.

Appeal from a decree of the Circuit Court of Baltimore County (FOWLER, C. J.)

The cause was argued before McSHERRY, C. J., BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*John Watson, Jr.*, for the appellants.

The bill alleges that at the time of the tax sale the purchaser was the tenant of appellants (which, of itself, is an allegation of possession); that it was his duty to pay the taxes according to the covenant in the lease; that he withheld his tax deed from the record for more than five years and until he was ready to transfer the title to Toner; that he alone knew that the description on the tax ledger referred to the lot in question; that notice of the proposed sale was served upon Levi, and that by his fraudulent acts and concealments he encouraged, promoted and procured the sale in order to acquire the fee-simple interest in said lot; and that these acts and concealments, together with the continuous payment of the ground rent were parts of a scheme to defraud appellants and deprive them of their property; and that inasmuch as it was Levi's legal duty to pay said taxes (he being the tenant and the assessment being in his name) the payment by him as purchase-money at the tax sale was but the payment of taxes and expenses which he was under obligation to pay.

There is here presented not only the allegation of fraud, but of a breach of duty—the duty to pay the taxes—in respect of which the tenant is a trustee for the landlord. "Every violation by a trustee of a duty which equity lays upon him, whether willful and fraudulent, or done through negligence or arising through mere oversight or forgetfulness, is a breach of trust." *Duckett* v. *Mechanics' Bank*, 86 Md. 403.

In *Baumgartner* v. *Fowler*, 82 Md., the equity Court retained jurisdiction, notwithstanding the plaintiffs were not in possession of the property and did not *even know where it was situated.* They had a deed for the legal title; the purchaser at the tax sale had also a deed for the legal title. The pur-

chaser's deed, by virtue of the tax sale, placed him constructively in possession. Even a judgment creditor or a mortgagee not in possession may invoke the aid of a Court of equity to remove a cloud upon a title. *Polk* v. *Reynolds*, 31 Md. 106; *Schofield* v. *Ute Coal and Coke Co.*, 92 Fed. Rep. 269. *Ormsby* v. *Ottman*, 85 Fed. Rep. 492.

"The jurisdiction in equity attaches unless the legal remedy, both in respect to the *final relief* and the *mode of obtaining it* is as *efficient as the remedy which equity would afford under the same circumstances.*" *Kilbourn* v. *Sunderland*, 130 U. S. 514; *Gormley* v. *Clark*, 134 U. S. 338; *Arndt* v. *Greggs*, 134 U. S. 316. And the jurisdiction attaches where the invalidity of the tax deed does not appear upon its face, but must be shown by facts *dehors* the deed itself; the common law action does not afford *adequate* remedy. *Ritchie* v. *Sayers*, 100 Fed. Rep. 520.

The demurrer filed in this case would, if urged at law, equally non-suit the plaintiff (Mrs. Openheimer) so that its effects would be to deprive her of all remedy, whether at law or in equity ; whereas here she alleges fraud upon the part of the defendant, Levi.

By reason of recent statutes providing for the redemption of ground rents, irredeemable rents have acquired a special market value. The appellant, Mrs. Oppenheimer, claims the *reversion and rent*, not the entire fee ; and even had she the right to pursue the remedy by ejectment (which she han not, as there was at the time of the filing the bill in this case, no rent in arrears), she should not be compelled to resort to a Court of law to find relief against this fraud. "It is one of the characteristic features of the relief afforded by Courts of equity, that the effort always is to put the complainant in *exactly* the position he would have occupied had it not been for the wrongful act of the defendant." *Bispham Pr. Eq.*, sec. 361.

Ejectment would not afford an *adequate* and complete remedy. *Kilbourn* v. *Sunderland, supra; Gormley* v. *Clark, supra; La Coss* v. *Wadsworth*, 56 Mich. 429. The lessor has the *option* of re-entering ; he is not bound to do so. To com-

pel the appellants to resort to a Court of law to pursue the
remedy by ejectment would be to enforce a forfeiture, which
is abhorrent to equity. "Courts are always ready to seize
hold of *any circumstances* that can reasonably avoid so harsh
a measure as a forfeiture." *Mutual End. Assn.* v. *Essender*,
59 Md. 468; *Donaldson* v. *Polk*, 64 Md. 506.

The bill in this case prays for a declaratory decree to the
effect that Mrs. Oppenheimer is seized of the reversion and
rent and is entitled to collect the rent reserved, as well as for
other specific and general relief.

Secs. 26 to 30 of Art. 16, Code, give the absolute right to
appellants to proceed in equity upon such prayer. And it is
not necessary under this statute to show possession in the
plaintiff. Nor is it even necessary in such statutes to provide
for a trial by jury. *Gormley* v. *Clark*, 134 U. S. 346–7; *Arndt*
v. *Griggs*, 134 U. S. 316; *Ormsby* v. *Ottman*, 85 Fed Rep. 492;
*Cloyd* v. *Trotten*, 118 Ill. 391.

*William Grason* (with whom was *L. M. Bacon* on the
brief), for the appellee.

1. The effect of the sale for taxes, and the deed from the
treasurer, was to vest in the purchaser a *prima facie* fee-simple
title to the property in question. *Guisebert* v. *Etchinson*, 51
Md. 478; *Cooper* v. *Holmes*, 71 Md. 20; *Carter* v. *Woolfork*,
71 Md. 283; *Textor* v. *Shipley*, 86 Md. 424.

2. Under the well-settled principles of law, the equitable
jurisdiction of a Court cannot be invoked for the purpose of
removing a cloud upon title, arising from the proceedings in a
tax sale and the subsequent conveyances of the property; the
proper remedy is an action of ejectment, in which proceeding
all questions of fraud, irregularity, etc., are open to the jury.
*Polk* v. *Pendleton*, 31 Md. 118; *McCoy* v. *Johnson*, 70 Md.
490; *Livingston* v. *Hall*, 73 Md. 386; *Textor* v. *Shipley*, 77
Md. 474; *Keys* v. *Forrest*, 90 Md. 132.

3. In order to maintain such a bill, *possession* at the time of
the institution of the suit, as well as the legal title, must be
distinctly and expressly averred. In this case, the bill

alleges—and it is a concessum—that the defendant was in the actual, physical possession of the property. *Livingston* v. *Hall*, 73 Md. 386; *Polk* v. *Pendleton*, 31 Md. 118.

4. There being no allegation of the plaintiff's possession at the time of the filing of the bill (the fact being otherwise), the bill would be dismissed on final hearing ; consequently the plaintiff has not been damnified by the dismissal of the bill without giving him an opportunity to amend. *McAleer* v. *Horsey*, 35 Md. 439; *Anders* v. *Devries*, 26 Md. 222; *State*, *use of Bacon*, v. *B. & P. R. R.*, 58 Md. 482; *Kriete* v. *Myer*, 61 Md. 558.

PEARCE, J., delivered the opinion of the Court.

Samuel Ellinger and wife, in 1869, leased the lot of land now in controversy, situated in Baltimore County, to Lena Sachs for ninety-nine years reserving to the said Ellinger and his heirs a yearly rent of fifty dollars payable one-half February 1st, and the other half August 1st; and the lessee covenanted for herself, her personal representatives and assigns to pay this rent and the taxes upon the lot. The leasehold estate therein, by deed of assignment made December 31st, 1884, became vested in the appellee, Jacob Levi, and his wife, Babet Levi, who on February 16th, 1887, assigned the same to Wm. H. Dryden. In 1890, the taxes for a previous year being in arrear, the fee in the premises was sold by the Collector of Baltimore County to Jacob Levi, the appellee, to whom it was conveyed by said collector on January 23rd, 1891. This deed however, was not placed upon record until June 13th, 1896. Samuel Ellinger died July 6th, 1891, and shortly thereafter his heirs conveyed to the appellant, Amanda Oppen-heimer, the reversion in, and the ground rent issuing out of, said lot. On May 8th, 1896, Levi united with Dryden fn conveying to Henry Toner and wife, a lot of ground desig-nated as the lot described in the Ellinger lease, but which through error was made to embrace a lot but fifty feet square, instead of fifty feet by one hundred and fifty feet, and this was conveyed "subject to the annual rent reserved in the orig-

inal lease from Samuel Ellinger and wife to Lena Sachs. On December 21st, 1900, Toner, whose wife in the meantime had died, conveyed the lot to Jacob Levi, the appellee, subject to the payment of said annual rent. Levi paid the annual rent from the time he acquired the leasehold estate, December 31st, 1884, down to the time of the conveyance by himself and Dryden to Toner, May 8th, 1896, and Toner paid the same from May 8th, 1896 to December 21st, 1900, when he assigned to Levi, who has refused to pay the subsequently accruing rent, claiming the fee by virtue of said tax sale, and the subsequent assignment to him.

Thereupon Amanda Oppenheimer and her husband, on January 15th, 1901, filed a bill alleging all the facts above recited, and averring that the tax sale mentioned and the various subsequent conveyances constituted a cloud upon her title to the reversion and rent, for the removal of which she was entitled to relief in equity. The bill also alleges that at the time of this tax sale, this lot was assessed to Jacob Levi, and had been so assessed for several years, and that the tax sale was void for several reasons, not necessary to enumerate here. The bill further charges that notwithstanding the assignment from Levi to Dryden in February, 1887, Levi remained, and continued to be, the real owner of the leasehold, and that he paid the ground rent continuously from 1884 to 1896 to Samuel Ellinger and those claiming under him; that the lot was assessed up to the time of the tax sale, to Levi, and that notice that the taxes were overdue, and that sale would be made if they were not paid, was served upon him, who was the real owner of the leasehold, and as such bound to pay said taxes, and then specifically charges "that by his fraudulent acts and concealments he encouraged, promoted, and procured the said sale with the intention of acquiring the fee-simple interest in said lot for the trivial sum of $46.00 for which the same was sold; * * * * and that the payment by him of the purchase-money at such tax sale was but the payment of the taxes and expenses which he was under obligation to pay."

The prayer of the bill is :

1st.  That the tax sale may be declared void.

2nd.  That the deed from the collector may be declared void and be vacated and annulled.

3rd.  That a decree may be passed declaring the appellant to be seised in fee of the reversion in said lot, and to be entitled to collect the rent reserved in the original lease from Ellinger.

The appellee demurred to the bill, and assigned the following grounds :

1st.  That the bill stated no sufficient case to entitle the plaintiff to relief.

2nd.  That the Court had no jurisdiction to hear and determine the matter.

3rd.  That the plaintiff's remedy, if any, was in a Court of law.

4th.  That there was a full, complete, and adequate remedy at law.

5th.  That the plaintiff had neither the legal title to, nor the possession of the property.

At the hearing, the Court sustained the demurrer and dismissed the bill, holding in the opinion filed, that as there was no allegation of possession by the plaintiff at the time the bill was filed, the case was governed by the case of *Textor* v. *Shipley*, 77 Md. 474, and those which preceded it, in all of which it is held that there must be such averment of possession, followed by proof, to warrant a decree for plaintiff.

There can be no doubt that such is the *general* rule of equity, and that as such it is firmly established in this State by numerous decisions.   In *Helden* v. *Hellen*, 80 Md. 621, where a bill filed to remove a cloud upon the title failed to allege possession by the plaintiff, the bill was dismissed on demurrer, the Court saying : " If the possession is in another, the remedy is by an action of ejectment ;   *   *   *   *   whatever may be the decisions elsewhere, no case in this State has gone so far as to maintain a bill in equity under the facts and circumstances of this case ; " and the rule was reaffirmed in

*Keys* v. *Forrest*, 90 Md. 132, the latest case upon the subject n this Court.

But while this is the *general* rule, there are some recognized exceptions to its application. In *Crook* v. *Brown*, 11 Md. 172, applying the general rule to the facts of that case, JUDGE TUCK said: " We know of no head of equity jurisdiction under which this (amendment to the bill) can be maintained. It would be substantially to give to a chancery suit the effect of an action in ejectment. * * * * There are some circumstances under which Courts of equity will amove a party in possession and put in another, but these are cases of peculiar character." So in *Livingston* v. *Hall*, 73 Md. 395, JUDGE ALVEY said: "To maintain a suit of this character, it is, as a *general* rule, necessary that the plaintiff should be in the possession of the property." And in *Steuart* v. *Meyer*, 54 Md. 467, a case arising under a tax sale of property subject to ground rent, relief was granted notwithstanding the plaintiffs were not in possession, JUDGE ALVEY saying: " They are interested only in the annual ground rents and in the estate of the reversion ; they are not entitled to the possession and could not therefore sue in ejectment for the recovery of the property. Under the circumstances of this case, without resort to a proceeding like the present, the parties would be without adequate remedy for relief against the effect of the *prima facie* title in the purchaser." In *Textor* v. *Shipley*, 77 Md. *supra*, it was argued that the decision in *Steuart* v. *Meyer* was in conflict with all the other cases in this Court on that subject and overruled the previous cases, but the opinion filed by JUDGE ROBINSON on the re-argument in *Textor* v. *Shipley*, in which JUDGE ALVEY concurred, explained what were the circumstances alluded to by him in *Steuart* v. *Meyer*, and showed that in that case, when the bill was filed, the property in controversy was in the possession of receivers appointed by the Court, and that the plaintiff could not resort to the ordinary remedy by ejectment against Meyer as a disseisor, for the reason that he was not in possession of the property, and that in maintaining the jurisdiction of equity under the peculiar circumstances of that case it was not meant

to question the general rule laid down in the earlier cases, "that those only who have a clear, legal and equitable title to land, connected with the possession, have any right to claim the interference of a Court of equity to give them peace, or dissipate a cloud on title." There are decisions elsewhere from Courts of repute that actual possession by a tenant is equivalent to actual possession by the landlord for the purpose of such a bill, but these are not consistent with the decision in *Steuart* v. *Meyer*, as explained in *Textor* v. *Shipley*, and need not be referred to. There are, however, well established legal principles, applicable to the facts of this case, which, in our opinion, take it out of the general rule and bring it within the exceptions in which equity has jurisdiction. These principles cannot be better stated than in the language of JUDGE COOLEY, extracted from his Law of Taxation: "Some persons, from their relation to the land or to the tax, are precluded from becoming purchasers on grounds which are apparent when their relation to the property and to the taxes is shown. The title to be given on a tax sale is a title based on the default of the person who owes to the public the duty to pay the tax, and the sale is made by way of enforcing that duty. But one person may owe the duty to the public and another may owe it to the owner of the land by reason of contract or other relations. Such a case may exist where the land is occupied by a tenant, who, by his lease, has obligated himself to pay the taxes. Where this is the relation of the parties to the land, it would cause a shock to the moral sense, if the law were to permit this tenant to neglect his duty and then take advantage thereof to cut off his lessor's title by buying in the land at a tax sale. * * * * * There is a general principle applicable to such cases, which may be stated thus: That a purchase, made by one whose duty it was to pay the taxes, shall operate as a payment only; he shall acquire no right as against a third party by a neglect of the duty which he owed to such party. This principal is universal and is so entirely reasonable and just as scarcely to need the support of authority. Show the existence of the duty and the disqualifica-

tion is made out in every instance." A long list of cases, illustrating the application of the principle thus stated under a great variety of circumstances, is given in a foot note to the text, and a valuable note on the same subject will be found upon page 939 of 53 L. R. A., appended to the case of *Smith* v. *Newman*, in which it is said that the cases are all agreed that a tenant cannot acquire a valid title as against the land-lord, by virtue of a tax sale during the tenancy, for taxes which the tenant had agreed to pay. Among these may be cited the following:

" At most, the tenant could only become seised under the tax deed, in trust for his landlord if living ; if dead, then for his heirs or their assigns." *Burgett* v. *Taliaferro*, 118 Ill. 516.

" Payment of taxes by a tenant at a tax sale, will be considered as a redemption of the land for his landlord, and he will remain his tenant as before." *Williamson* v. *Russell*, 18 W. Va. 625.

" In such case, the tenant can acquire no valid title as against such owner, but would hold any title thus acquired in trust for such owner." *Bertram* v. *Cook*, 32 Mich. 519.

" A tax purchase, made while such relation exists, is made in wrong ; and the law, in circumvention of dishonesty, will conclusively presume that it was made in performance of duty, and not in repudiation of it." *Conn. Mut. Life Ins. Co.* v. *Bulte*, 45 Mich. 120.

" A title so acquired would remain void, in the hands of a *bona fide* purchaser without notice." *Blake* v. *Howe*, 1 Aiken, (Vt.) 306.

" Where a lessee covenanted to pay all taxes and assessments on the demised premises during the term, he was bound to pay a special assessment for planking and curbing the sidewalk in front of the premises, and *where he disputed this liability, and permitted the lot to be sold to pay this assessment, and after the expiration of the term, became the assignee of the purchaser, and took the tax deed*, the lessor was held entitled to a judgment that the lessee quit claim the premises to him, and that he be restrained from conveying or encumbering them." *Shepardson* v. *Elmore*, 19 Wis. 424.

Some of these cases were actions of ejectment; others, and notably the last cited, were bills to remove cloud upon title. To the same effect are the cases of *Stout* v. *Merrill*, 35 Iowa, 47; *Haskell* v. *Putnam*, 42 Me. 244; *Willard* v. *Ames*, 130 Ind. 351; *Reily* v. *Lancaster*, 39 Cal. 354; *Coxe* v. *Gibson*, 27 Pa. St. 160; *Rothwell* v. *Dewees*, 2 Black. 613; *Lamborn* v. *Dickinson County Commissioners*, 97 U. S. 181.

It is true that in an action of ejectment, this plaintiff would be entitled to recover upon proof of the facts she alleges in her bill, but it does not follow that equity has not jurisdiction to grant the relief prayed, and we think an examination of the authorities will show that it is our duty to sustain this bill, and not to send the plaintiff to a Court of law.

In *Hamilton* v. *Cummings*, 1 Johnson's Ch. Rep. 523, a bill was filed praying the delivery up and cancellation of certain bonds executed by the plaintiff's testator, which it was charged were given to indemnify defendant as bail in certain suits, but which were to be surrendered and cancelled if defendant was not damaged or put to costs. The bill alleged that the suits were all settled and that defendant had been put to no costs or damage. In considering the objection made to the jurisdiction of equity in that case, CHANCELLOR KENT said: " I am inclined to think that the weight of authority and the reason of the thing are equally in favor of the jurisdiction of the Court, whether the instrument is, or is not, void at law, and whether it would be void from matter appearing on its face, or from proof taken in the cause.   *   *   *   *   *   But while I assert the authority of the Court to sustain such bills, I am not to be understood as encouraging applications, where the fitness of the exercise of the power of the Court is not pretty strongly displayed. Perhaps the cases may be reconciled on the general principle that the exercise of this power is to be regulated by sound discretion, as the circumstances of the individual case may dictate, and that the resort to equity, in order to be sustained, must be expedient, because the defense, not arising on its face, may be difficult or uncertain at law, or from some other special circumstances peculiar to the case, and rendering

a resort here highly proper, and clear of any suspicion of any design to promote expense and litigation."

In *Van Horne* v. *Fonda*, 5 Johnson's Ch. Rep. 406, two devisees were in possession of lands under an imperfect title devised to them by their common ancestor, and it was held that one of these could not buy up an adverse title, to disseise or expel his co-tenant, but that such purchase would enure to their common benefit, subject to an equal contribution to the expense ; and the same high authority said : " It is not consistent with good faith, nor with the duty which the connection of the parties, *as claimants of a common subject,* created that one of them should be able, without the consent of the other, to buy in an outstanding title, and appropriate the whole subject to himself, and thus undermine and oust his companion. It would be immoral, and repugnant to a sense of refined and accurate justice." Accordingly the Chancellor sustained a bill for an account filed by the devisee sought to be ousted under the adverse title bought by his co-devisee.

That case was relied on as conclusive by CHANCELLOR COOPER in *Harrison* v. *Winston*, 2 Tenn. Ch. Rep. 544, in which it was held that a beneficiary under a trust assignment for the benefit of creditors, who is a party to the suit for the execution of the trust, consenting thereto, and accepting its benefits, cannot acquire a title to any of the property under a tax sale, free from the trust ; and that one who joins with him in the purchase with knowledge of his fiduciary relations will stand in no better position ; and that the complainant was entitled to a decree perpetually enjoining an action of ejectment brought by the purchaser of the tax title, and declaring that the tax title enured to the benefit of the trust.

Applying the principles thus declared, to the case before us, we cannot say, as was said in *Crook* v. *Brown, supra,* "we know of no head of equity jurisdiction under which this can be maintained." We perceive at once that upon the allegations of the bill, there was fraud in the acquisition by defendant of the tax title, and that as a result of this fraud the title is held by the defendant in trust for the plaintiff, and we know

that fraud and trusts are independent heads of equity juris-
diction.    In *King* v. *Carpenter*, 37 Mich. 366, it was held that
" where a party has an equitable cause of action against an-
other, coming within any recognized rule of equity jurisdic-
tion, such right can be enforced in equity whether the com-
plainant is in possession or not."    In *Sheppard* v. *Nixon*, 43
N. J. Eq. 633, the Court said :    " The exception to the rule
(that the plaintiff must be in possession) is where the case
presents some special ground for equitable interposition, such
as fraud, accident, or mistake, requiring the setting aside or
reformation of deeds or instruments of conveyance.    If these
elements be wanting, a bill to establish complainant's title, is
an ejectment suit, pure and simple."    To the same effect is
*Essex County Bank* v. *Harrison*, 40 Atl. Rep. 211, 57 N. J.
Eq. 91, and in *Security Savings and Trust Co.* v. *Mackenzie*,
52 Pac. Rep. 1046, 33 Ore. 209, it was held that the question
of possession of real estate as required by a statute of the
State, in a suit for an interest therein, was immaterial, when
the relief sought is such that an equity Court has jurisdiction
independent of the statute.

This view of the law is sustained in 17 *Ency. of Pleading
and Practice*, 309, where it is said :    " Where there is any
other distinct head of equity jurisdiction sufficient to support
the action, possession by the plaintiff is not required, but
equity will retain the cause and grant relief by quieting the
title or removing clouds."    In the present case, fraud in the
acquisition of the tax title is distinctly charged, such fraud as
would raise a trust in favor of the plaintiff.    The defendant
has demurred, and the effect of his demurrer is to admit all
matters of fact well pleaded, and we think the fraud is well
pleaded.    Again in 17 *Ency. of Pleading and Practice*, 311,
it is said, that " it would seem that ejectment is an inadequate
remedy in all cases where, although the plaintiff might recover
possession, a void instrument or muniment of title would be
left outstanding and uncancelled," and it was so held in *Red-
mond* v. *Packingham*, 66 Ill. 434.

Here, if the plaintiff were to recover in ejectment the tax

title would remain outstanding, and would, after such recovery, still constitute an apparent cloud upon the title whenever the property might be upon the market.

Consequently we think the demurrer should have been overruled and the bill retained.

Nothing that we have said, however, is to be understood as overruling or impairing the authority of any of the previous cases in this Court, none of which presented the question now before us. In *Keys* v. *Forrest, supra,* the case was not presented on demurrer, but was heard upon bill, answer and testimony. The bill alleged, and the answer denied, fraud in the acquisition of tax title, and it will be seen on reference to the record that the lower Court considered the allegation of fraud, and found it was not sustained, and this Court concurred in that finding. Had the possession by the plaintiff been essential in that case it would have been idle to determine the ques- of fraud.

There is therefore no conflict or inconsistency between this case and any of the earlier cases in this Court.

For the reasons given the decree of the Circuit Court will be reversed.

> *Decree reversed with costs to the appellant above and below and cause remanded for further proceedings.*

(Decided January 16th, 1903.)