HENRY B. CHRISTHILF ET AL. *vs.* JOHN W. BOLL-MAN, TRUSTEE, ET AL.

*Original Lessee Who Covenanted to Pay Taxes Cannot Buy the Demised Property at a Tax Sale, Although After Assignment of the Leasehold Interest.*

A lessee who has covenanted to pay the taxes on the demised land, as well as the annual rent, cannot, by purchasing the property at a tax sale, made for non-payment of taxes, become the owner thereof as against the lessor, although he may have assigned the leasehold estate before the tax sale.

In this case, after the lessee purchased the property at the sale for non-payment of the taxes which he had covenanted to pay, he conveyed it to his daughter. A bill by the owner of the rent alleged that the conveyance was made in pursuance of a scheme to defraud the plaintiff, and asked that the sale and the deed from the collector to the lessee, as well as the deed from the lessee to his daughter, be declared null and void, and that the plaintiff be declared the owner of the reversionary interest in the land. *Held,* upon the evidence, that the plaintiff is entitled to the relief asked for.

*Decided January 10th, 1911.*

Appeal from the Circuit Court No. 2 of Baltimore City (SHARP, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*A. C. Trippe,* for the appellants.

*William S. Thomas,* for the appellees.

PATTISON, J., delivered the opinion of the Court.

On the 19th day of March, 1879, one Wendel Bollman leased unto Henry B. Christhilf, one of the appellants, a lot of land in the City of Baltimore for the term of ninety-nine years, renewable forever, at an annual rent of one hundred and seventy-two dollars, payable semi-annually on the first day of January and of July in each and every year during the continuance of the lease. On the 15th of February, 1884, Wendel Bollman conveyed his reversionary interest in this lot of land unto Ann S. M. Bollman, and on the 22nd day of January, 1887, Ann S. M. Bollman conveyed her interest therein unto John W. Bollman in trust for Elizabeth Mc-Machen, one of the appellees, for and during her natural life, she for such time to receive the rents, issues, incomes and profits therefrom. On the 11th day of November, 1900, John W. Bollman, the trustee named in the last-mentioned deed, died, and was succeeded in said trust by his son, John W. Bollman, one of the appellees.

Upon default in the payment of the State and City taxes for the years 1899, 1900 and 1901, this lot, on the 23rd day of December, 1901, was by James P. Gorter, Collector of Taxes, sold for the payment of the aforesaid taxes, at which sale Henry B. Christhilf became the purchaser at and for the sum of two hundred and fifty dollars, and to whom the prop-

erty was conveyed on the 20th day of July, 1904, by the said Collector. Upon the same day the said Henry B. Christhilf and wife conveyed the same to Katherine M. Christhilf, his daughter, for an alleged consideration of five dollars and other valuable considerations.

The rent for this lot of land was regularly paid by the said Henry B. Christhilf up to and including the payment of July 1st, 1903, but when called upon in January following to pay the rent due January 1st, 1904, he refused to pay, and based his refusal to do so upon the fact that the land had been sold for the non-payment of taxes. This was the first information received by the trustee or Elizabeth McMachen as to such sale.

Thereupon, on the first day of February, the appellees filed their bill alleging all the facts above recited and averring that the deed made by the defendant, Henry B. Christhilf, to his daughter, Katherine M. Christhilf, was in reality made for the benefit of the said Henry B. Christhilf and was made and accepted for the purpose of further complicating the fraud which he, the said Henry B. Christhilf, had perpetrated upon them; and alleging that the tax sale and the deed from Henry B. Christhilf to his daughter constituted a cloud upon the title held by the plaintiffs.

The bill also alleges that at the time of said sale and for a number of years prior thereto this property was assessed to and in the name of Henry B. Christhilf upon the books in the office of the Collector of Taxes, and that he was notified by the Collector of the default in the payment of the taxes and informed that the land would be sold if such taxes were not paid. He did not pay them, but permitted the property to be sold, became its purchaser and subsequently received a conveyance therefor. Nor did he notify the plaintiffs of such default in the payment of taxes or the sale thereunder until January, 1904, although during all this time he was paying them rent therefor under the terms of the original

lease. That the purpose of this concealment was to enable him to procure the fee simple interest in said property, and "that the conduct of the defendant was but part of a scheme to blind them as to the true condition of affairs and to lull them into a sense of security so as to defeat them and those claiming under them of their property and permit the time to elapse when they would have a right under the law to redeem said property from said sale made by the said Tax Collector." And further alleging that it was his duty to pay such taxes, and the payment by him of such money at such sale was but the payment of the taxes and expenses which he was under legal obligation to pay.

The prayer of the bill is: (1) That the said tax sale may be declared void and of no effect; (2.) that the aforesaid deed executed by the Collector of Taxes may be declared void and may be vacated; (3) that the aforesaid deed made by Henry B. Christhilf to his daughter, Katherine M. Christhilf, may be declared void and may be vacated; (4) that a decree may be passed declaring the appellees to be seized in fee of the reversion in said lot and to be entitled to collect the rents reserved in said lease from Wendel Bollman.

The defendant, Henry B. Christhilf, answering the bill, alleges that he was not at the time of default in the payment of taxes or at the time of the tax sale the owner of the leasehold interest in this lot of land; that he had not been the owner of it for a period of fourteen years prior to the aforementioned tax sale; that on the 7th day of December, 1887, he sold and assigned his interest therein to his brother, Edward J. Christhilf. In his answer he further alleges that the payment of rent made by him to the plaintiff after the sale and assignment to his brother were not made by him as lessee, but as agent of his brother, the assignee, and denies any liability for the payment of rent since said sale and assignment, and further denies that such payment by him for and on behalf of his brother is any evidence of bad faith

on his part.   He also denies all charges of fraud alleged
against him in the bill, and avers that the deed to his daugh-
ter is valid and is of sufficient consideration to support it.
He further alleges, as expressed by him, "that the only possi-
ble action against the defendant under the circumstances
set forth is a common law suit on the covenant in the origi-
nal lease and is full and complete, and the complainants
have no right of action against the defendant under the bill
of complaint in this case."

The other defendant, Katherine M. Christhilf, in answer-
ing the bill, admits the execution of the deed to her by her
father, Henry B. Christhilf, and alleges that under it she is
rightly seized in fee simple of the property therein described.
Her answer denies the allegations in the bill as to the alleged
object of said deed, and alleges that it was executed to her in
good faith and was so accepted by her.   She further denies
all allegations of fraud alleged against Henry B. Christhilf,
and also denies that the plaintiffs are entitled to any relief
in equity under the allegations in the bill.

Edward S. Miller, grandson of Wendel Bollman, the origi-
nal lessor, produced on the part of the plaintiffs, testified
that he had, for about twenty years, been collecting the rent
for the leased lot in controversy from Henry B. Christhilf
for his cousin, Elizabeth McMachen, who was at the time of
his testifying about eighty years of age; that the last rent
collected by him from Henry B. Christhilf was in July,
1903; that he received from him the rent for said lot of
land for the years 1899, 1900, 1901, 1902 and July, 1903.
That he did not know said taxes had not been paid or that
the property had been sold for taxes until January, 1904.   At
that time he called upon Henry B. Christhilf for the pay-
ment of rent then due, when he was told by him that he did
not owe the rent, and when asked why he stated that the
property had been sold for taxes and that he had become the
purchaser thereof; he at the same time informed the witness

that his brother, Edward J. Christhilf, was the owner of the leasehold interest in the land. This was the first information that he had received as to the alleged ownership of the leasehold interest by the brother. The bills for ground rent were all made out against Henry B. Christhilf, by whom the rent was paid and to whom receipts were given. Upon cross-examination he was asked if he knew from whom Henry B. Christhilf got the money with which to pay the rent; he replied by saying that at times he stated he borrowed it from his wife, although witness did not know from whom he got it; at other times when he would call upon the defendant, Christhilf, for the rent he would be told that he did not have the money and assigned as a reason therefor that the people renting the stalls had not paid their rent.

The defendants did not answer under oath, nor did either of them, though charged with fraud, testify in support of the denials and averments contained in the answers, although called upon to go on the stand by the Court; nor was the assignee, Edward J. Christhilf, placed upon the stand to testify in support of the *bona fides* of the assignment to him.

August E. Christhilf, son and brother to the defendants, when produced by them as a witness, testified that his sister was a trained nurse; that she had paid two hundred dollars on the purchase of the property conveyed to her by her father. On cross-examination he stated that he did not know the date of the purchase, but the date of the payment of the two hundred dollars was March 10th; the year he could not recall. He knew of the payment of the money by his sister from seeing her bank book, which was shown to him by her on Thursday night preceding the date of his testifying. At the time he testified he did not know where his sister was, but supposed she was at home. That he had no personal knowledge of the payment of the two hundred dollars by his sister, but understood her to say that she paid it upon the property. That all he knew about the payment of this money was what his sister had told him.

Christian Berger, a witness offered by the defendants, tes-
tified that he rented a portion of the demised premises from
Edward J. Christhilf at a rental of ten dollars a month and
paid the rent to him, Edward Christhilf, when it was con-
venient to pay him; "he (Edward J. Christhilf) works right
above, at Albaugh's blacksmith shop, and he receipts for it."
He did not say to whom he paid it when it was not conven-
ient for him to pay to Edward J. Christhilf.

Thomas Gross, negro man, testified that he rented a part
of the property from Edward J. Christhilf and paid to him
the rent therefor, amounting to three dollars a month; that
it consisted of stall room and was in bad condition; that he
had paid the rent up to the month just preceding the last
month.

We have given practically all that was said by the wit-
nesses offered by the defendants in support of the position
taken by them and in denial of the charges of fraud alleged
against them.

Upon the submission of the case the Court below, after
hearing the testimony, passed an order or decree by which
the tax sale and the deed from the Collector to Henry B.
Christhilf and the deed from Henry B. Christhilf and wife
to Katharine M. Christhilf were declared null and void, and
adjudged and decreed that the plaintiff, John W. Bollman,
trustee, and his successors in trust, was seized in fee of the
reversionary interest in the lot of land in controversy, with
the right to collect the rent reserved in the lease. It is from
this order or decree that this appeal is taken.

The facts of this case differ but little from those ·in the
case of *Oppenheimer* v. *Levi*, 96 Md. 296, and the relief
sought is the same. In that case the purchaser ·of the land
at the tax sale was the assignee of the leasehold estate of
which he was the holder at the time of the default in the
payment of the taxes and for which default the sale was
made. In this case the purchaser is the lessee under the

original lease, but was not, as he alleges, the holder of the leasehold interest in the land at the time of the default in the payment of the taxes, in consequence of which the sale was made. In this case it is contended, as it was in the *Oppenheimer case,* that the plaintiffs were not entitled to obtain the relief sought in a Court of Equity. The Court, however, in that·case held that they were properly in a Court of Equity and were entitled to the relief sought. The ruling in that case disposes of the contention made by the defendant in this case.

In that case this Court, speaking through JUDGE PEARCE, said: "There are well-established legal principles, applicable to the facts of this case, which, in our opinion, take it out of the general rule and bring it within the exceptions in which equity has jurisdiction. · These principles cannot be better stated than in the language of JUDGE COOLEY, extracted from his *Law of Taxation:* 'Some persons, from their relation to the land or to the tax, are precluded from becoming purchasers on grounds which are apparent when their relation to the property and to the taxes is shown. The title to be given on a tax sale is a title based on the default of the person who owes to the public the duty to pay the tax, and the sale is made by way of enforcing that duty. But one person may owe the duty to the public and another may owe it to the owner of the land by reason of *contract* or other relations. Such a case may exist where the land is occupied by a tenant who, by his lease, has obligated himself to pay the taxes. Where this is the relation of the parties to the land, it would cause a shock to the moral sense if the law were to permit this tenant to neglect his duty and then take ·advantage thereof to cut off his lessor's title by buying in the land at a tax sale.

" 'There is a general principle applicable to such cases, which may be stated thus: That a purchase, made by one whose duty it was to pay the taxes, shall operate as a pay-

ment only; he shall acquire no right as against a third party by a neglect of the duty which he owed to such party. This principle is universal and is so entirely reasonable and just as scarcely to need the support of authority. Show the existence of the duty and the disqualification is made out in every instance.' "

If it be true that the defendant, Henry B. Christhilf, was not the owner or holder of the leasehold interest at the time of default in the payment of taxes and at the time he became the purchaser of the land at the tax sale, will this fact remove him from the class of persons that are prohibited from buying at tax sales by reason of an obligation or duty resting upon them to pay such taxes? He was certainly within this class so long as he was the holder of the leasehold estate. In the lease to him of this land from Wendel Bollman he expressly covenanted for himself, his heirs, executors, administrators and assigns, to pay during the term of the lease, the taxes and assessments thereon when legally demandable. Was he relieved from his obligation or covenant to pay the taxes after the assignment of the leasehold interest to another? If not, he could not become the purchaser of the property at the tax sale made in consequence of his failure to pay such taxes, and any sale to him would be void and operate only as a payment of taxes owing thereon. For, as above quoted, the purchase made by one whose duty it was to pay the taxes shall operate as a payment only, and he shall acquire no right as against the third party by neglect of a duty which he owed such party. "Show the existence of the duty and the disqualification is made out in every instance."

"An assignment of the term and the acceptance of the assignee as tenant discharges the lessee from all obligations arising from privity of estate, but not from those arising from *privity of contract,* notwithstanding the assignee may have become liable by privity of estate, unless there is an agreement by which a new tenancy is created." *Cyc.,* Vol.

24, 280. "Express covenants running with the land and entered into by the lessee for himself, his heirs, executors, administrators and assigns, binds him during the term, though broken after he assigns over and after the acceptance of the rent by the lessor from the lessee." *Alexander's British Statutes,* 352.

In the case of *Boyle* v. *Peabody Heights Co. of Baltimore City,* 46 Md. 623, the assignee of the lease filed a bill asking for a new lease to be executed by the lessor before the expiration of the existing lease, under a covenant contained therein. The lessor admitted its obligation under the covenant to execute a new lease to take effect after the expiration of the term originally created, but denied that it was bound to execute a lease to take effect before that time, covering a portion of the time embraced in the original lease. He resisted the execution of a new lease on the ground that the lessee, who was not to be made a party to the new lease, would be released from his covenants in the original lease. In speaking of this contention this Court said: "It (the lessor) contends, and there can be no question of the soundness of the position, that if the new lease demanded should be executed without making Gosman (the lessee) a party thereto, the original lease would be destroyed and he would be absolved from his covenant to pay the rent, *as well as from the other covenants on his part which the lease contains, whereas if no new lease be executed he will remain liable on these covenants notwithstanding his assignment to the appellant."*

From the above authorities, it is clear that the obligation or covenant of the lessee, the appellant, to pay the taxes during the term was still binding upon him at the time of the default in the payment of the taxes, and as the sale was made by reason of such default, which was in fact his default, he could not become the purchaser of the property at such sale. Moreover, the liability of Henry B. Christhilf

for the payment of the taxes is admitted by him in his answer to the bill.

As stated above, this property upon being sold and conveyed by the Collector of Taxes to Henry B. Christhilf, was by him, upon the same day, conveyed unto his daughter, Katherine M. Christhilf. The bill charges fraud against both the grantor and the grantee in connection with the purchase of this land by the father at the tax sale and the conveyance of the same by him to his daughter, and prays that the deed conveying the land to the daughter, as well as the deed to him, be declared null and void. We do not think it is necessary to discuss at length the facts in this case in relation to such alleged fraud, but will content ourselves by saying that the conduct of the appellant and his daughter, the grantee, was not such as to impress the Court with the *bona fides* of the transaction. On the contrary, we think that the charge of legal fraud made against the defendants has been sufficiently established.

We find no reversible errors in the rulings of the Court upon the exceptions to the testimony, and will therefore affirm the order or decree of the Court below.

*Decree affirmed, with costs to the appellee.*