SAMUEL G. CROCKER, JR., *v.* JOSEPHINE PITTI HYMAN STEINHORN ET AL. *v.* SAME

[Nos. 9, 10, October Term, 1940.]

*Decided December 18th, 1940.*

The cause was argued before BOND, C. J., PARKE, SLOAN, MITCHELL, JOHNSON, and DELAPLAINE, JJ.

*Harry W. Allers*, with whom were *John A. Cochran* and *A. Frederick Taylor* on the brief, for Samuel G. Crocker, Jr., appellant.

*Louis J. Jira*, with whom was *Powell Vickers* on the brief, for Hyman Steinhorn and others, appellants.

*J. Cookman Boyd, Jr.*, with whom were *Boyd & Boyd* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The two appeals in this case are from the order of the chancellor overruling the demurrers of the defendants to the bill of complaint of Josephine Pitti, formerly Josephine Liberto, surviving wife of John Mario Liberto, against Hyman Steinhorn and Minnie Steinhorn, his wife, the Bank Loan and Realty Company, Incorporated, and Dorothy Epstein. One of the demurrers is by the defendant Samuel G. Crocker, Jr., and the other by the remaining defendants. Separate appeals were taken by the respective demurrants, who declined to plead further. The demurrers will be more conveniently considered together.

The material averments which are admitted by the demurrers may be thus stated: Under an ancient title the plaintiff through mesne conveyances was the owner in fee of the reversion in a parcel of land in Baltimore City out of which there issued an annual ground rent of thirty-four dollars. The land in question fronts for seventeen and one-half feet on the east side of Arch Street and extends, with this uniform width, eastward sixty-nine feet. This lot forms the southwestern part of a larger quadrangular lot of land. This larger area has a frontage of thirty-two feet on Arch Street when combined with the frontage of the first mentioned lot, and extends eastward, so as to include all of the first mentioned lot, with a uniform width of thirty-two feet, a distance of one hundred and thirty-five feet to the west side of Pearl Street, which is parallel with Arch Street. The leasehold interest in the quadrangular lot which so lies

between and fronts on both Arch and Pearl Streets was granted to one Elijah Hughes, who created on March 15th, 1859, a sub-lease of the interest in the large lot for the residue of the unexpired term of the leasehold interest at the yearly rent of sixty-eight dollars.

The sub-leasehold interest in the large lot was assigned by mesne grants to one Branna Mizrach, who gave a mortgage lien on this sub-leasehold interest to the New York Permanent Building and Loan Association, a body corporate. The sub-reversion leasehold estate in the smaller lot whose frontage was on Arch Street alone was acquired by mesne assignments by Elizabeth G. Crocker and Samuel G. Crocker, Jr., the latter of whom died on March 4th, 1937.

The taxes on the land and improvements for the years 1934, 1935 and 1936 were not paid by the owner of the sub-leasehold estate, Branna Mizrach, nor by the mortgage lien holder, the New York Permanent Building and Loan Association, nor by the owners of the leasehold estate, Elizabeth G. Crocker and Samuel G. Crocker.

On or about January 20th, 1936, the board of directors of the mortgagee formally resolved that the corporation should dissolve; and on December 18th, 1936, articles of dissolution were filed with the State Tax Commission of Maryland, in which it was stated that the association had no known creditors. The association was declared dissolved on December 31st, 1936. When the articles of dissolution were executed and filed, the defendant Hyman Steinhorn was the president of the association, and one of its directors, and as president signed the articles of dissolution.

The defendant, the Bank Loan and Realty Company, Incorporated, was formed on February 25th, 1936, under the laws of Maryland; and on December 7th, 1936, the mortgagee assigned the mortgage mentioned to the new corporation. The incorporators and first directors of the assignee were defendants Hyman Steinhorn and Minnie Steinhorn, his wife, and Dorothy Epstein. Hyman Steinhorn was the president of the Bank Loan and Realty

Company, Inc., the assignee, Minnie Steinhorn was its vice-president and Dorothy Epstein was its secretary, and these three have continued to be such officers and directors.

As a result of the failure in the payment of the taxes levied upon the lot and improvements, the collector of taxes for the City of Baltimore and the State of Maryland proceeded to sell the fee simple interest in the lot to satisfy the claim for the unpaid taxes. At this tax sale, the defendant Hyman Steinhorn became the purchaser, and the lot was thereafter, by deed dated July 25th, 1938, conveyed by the collector to Hyman Steinhorn in fee simple. The plaintiff had no knowledge of the failure to pay the taxes, nor that the property had been advertised to be sold and then sold for taxes until a long time after these occurrences.

The title thus acquired so remained until the 19th day of October, 1938, when Steinhorn and his wife leased the lot for a period of ninety-nine years renewable forever to a certain E. Ray Mattoon, subject to a yearly rental of sixty dollars, beginning from the 1st of November, 1938; and on the day of the date of this grant of the leasehold, the said Steinhorn and his wife, Minnie Steinhorn conveyed the reversion or ground rent of sixty dollars on said property to the defendant, Samuel G. Crocker, Jr. Thereupon the said tenant, E. Ray Mattoon, on October 19th, 1938, assigned his term or leasehold interest in the property to Hyman Steinhorn and Minnie Steinhorn, his wife.

The bill of complaint further alleges that the New York Permanent Building and Loan Association, Incorporated, and its assignee, the Bank Loan and Realty Company, Incorporated, were liable as mortgagee and assignee of mortgagee for the payment of the taxes on the property during the period they respectively held the mortgage lien; and that the said Hyman Steinhorn dominated and controlled both of said corporations, and used them for his personal purposes. And that for its fraudulent purpose of extinguishing the plaintiff's original and

irredeemable ground rent on the property, and her rights and estate as owner of the reversion, Hyman Steinhorn, as president and director of the mortgagee, and he and his wife and Dorothy Epstein, as the officers and directors of the assignee of mortgagee, with full knowledge that the taxes on said property had not been paid, permitted said taxes to remain unpaid, and the mortgagee and assignee to make and continue in default of their liability to pay the said taxes, and the said property to be sold in fee at the tax sale and the said Hyman Steinhorn to become the purchaser.

It is, also, charged that the plaintiff made demand on the defendant Samuel G. Crocker, Jr., for payment of the ground rent due as of November, 1937, and that he claimed to have paid the rent of thirty-four dollars to the plaintiff in December, 1937. This defendant, it is averred, during part of the year 1938, with full knowledge that the taxes for the years 1934, 1935, and 1936 had not been paid, although liable himself for the payment thereof, made numerous attempts to purchase the ground rent of the plaintiff without advising her that the taxes were unpaid, or that the property in question had been sold for their non-payment. In addition, it is set out that when the defendant Crocker found that the property had been sold for taxes, the defendant and purchaser, Hyman Steinhorn, was advised that Crocker would attempt to upset the tax sale and that thereupon Steinhorn advised Crocker not to do that and, in consideration of Crocker's not attacking the sale, Steinhorn would place a rent on the property in favor of Crocker. It is alleged, in addition, that without any valid consideration and in pursuance of the plan of the said Hyman Steinhorn and Samuel G. Crocker, Jr., to defraud this complainant of her ground rent, the defendant Steinhorn, as has been recited, leased the property to Mattoon; conveyed the reversion and ground rent of sixty dollars to Crocker; and immediately thereafter took from Mattoon an assignment of the leasehold interest in the property.

After a statement of these averments, the plaintiff, in a concluding paragraph, charges the matters and things, so alleged to have been done and to have occurred, "to a deliberate and fraudulent attempt of the defendants herein to deprive this complainant of her rights, title and interest in said original ground rent of $34.00 annually issuing from said property."

It is idle to argue that these facts, which the court on demurrer assumes to be true, do not require an answer. Nor may it be successfully urged that the perpetration of the fraud shall endure because accomplished through the medium of a corporate fiction. The alleged chief actor in the fraud is asserted to have dominated and controlled the intervening corporate entities and, through that domination and control, to have accomplished his personal ends and enterprises. It is appropriate that equity should deal with him according to the verities and not to his simulations. Where fraud exists, equity is equal to the occasion no matter how fair and regular the disguise it may assume. *Danzer & Co. v. Western Maryland Railway Co.*, 164 Md. 448, 457, 165 A. 463; *Carozza v. Federal Finance & Credit Co.*, 149 Md. 223, 238, 131 A. 332; *Williams v. Safe Deposit & Trust Co.*, 167 Md. 499, 505, 175 A. 331; *Barron v. Whiteside*, 89 Md. 448, 458, 43 A. 825; *Rabinowich v. Eliasberg*, 159 Md. 655, 663, 152 A. 437.

Under the prayer for general relief, the purchaser at the tax sale, under the facts and circumstances alleged, would hold the title to the land sold and to him conveyed in trust for the benefit of the plaintiff, so that the interest and estate of the plaintiff may be protected and enforced in accordance with equitable principles. *Christhilf v. Ballman*, 114 Md. 477, 484, 79 A. 208; *Waring v. National Sav. & Trust Co.*, 138 Md. 367, 373, 114 A. 57; *Oppenheimer v. Levi*, 96 Md. 296, 54 A. 74; *Kelly v. Nice*, 141 Md. 472, 481, 119 A. 333; *Cooley on Taxation*, (4th Ed.) secs. 965, 1437-1446. See *Collins v. Hoffman*, 62 Wash. 278, 113 P. 625; *Grison Oil Corp. v. Lewis*, 175 Okl. 597, 54 P. 2nd 386; *Robinson v. Marino*, 145 Md.

301, 307-309, 125 A. 701. The facts alleged and admitted by the demurrer make *Textor v. Shipley,* 77 Md. 473, 26 A. 1019, 28 A. 1060, and similar decisions inapplicable.

The point that the Mayor and City Council of Baltimore and its Collector of Taxes are necessary parties is not well taken. The municipality has been paid the taxes. It has no interest to be affected, and no relief will run against the municipality. Its grantee will hold the title in trust for such uses as equity shall declare. See *Oppenheimer v. Levi, Christhilf v. Ballman,* and *Waring v. National Sav. & Trust Co., supra.*

The order overruling the demurrers will be sustained, but the case will be remanded for answer and further proceedings in conformity with this opinion.

> *Order in Nos. 9 and 10 Appeals affirmed, with costs to appellee, and cause remanded for further proceedings in conformity with this opinion.*