(Decided 21st December, 1869.)

---

JOSEPH P. SCHOOLEY and ABRAHAM PRICE *vs.* JOHN ROMAIN.

*Construction of a Bond and Mortgage— Condition not a Penalty or Forfeiture—Effect of a tender of Interest after breach of Condition—Assignees of the Equity of Redemption.*

A and B being indebted to C, on their bill obligatory, bearing date the 24th day of July, 1866, on the same day, with their respective wives, executed a mortgage to secure the payment thereof, according to its terms. The bill obligatory provided, "that the said sum of money .should bear interest from the 12th day of July, 1866, at six per cent. por annum, and be payable annually from the said 12th day of July, 1866; and that if said interest should be punctually paid when the same falls due, the obligors should have five years from said 12th day of July in said year, in which to pay the principal; but that if default

should be made in the punctual payment of the interest, the whole principal should become due and demandable." The mortgage also contained a covenant to the same effect. There was a sale of the equity of redemption and default in the payment of the interest. Upon a bill filed to foreclose the mortgage and to procure a sale of the mortgaged premises. HELD:

1st. That upon the failure to pay the interest annually, according to the terms of the covenant, as contained in the bond and mortgage, the whole debt became due and demandable.

2d. That the condition of the mortgage was not in the nature of a penalty or forfeiture.

3d. That the tender of the interest, in August, 1867, being after the same fell due, did not avoid the consequences of the breach of the condition.

4th. That the assignees of the equity of redemption took the land subject to the mortgage and the covenants therein, which may be enforced against the land in the same manner and to the same extent, as if the assignment had not been made.

APPEAL from the Circuit Court for Somerset County, in Equity.

The bill in this case was filed to foreclose a mortgage, and to procure a sale of the mortgaged premises. The facts of the case are sufficiently set out in the following opinion of the Circuit Court:

This suit was instituted by the complainant, John Romain, to foreclose a mortgage executed to him by Thomas S. Peers and wife, and James Richmond and wife, and to procure a sale of the mortgaged premises. The original mortgagors, and Joseph P. Schooley and Abraham Price, purchasers of the equity of redemption, are the defendants.

The bill states that the defendants, Peers and Richmond, were indebted to the complainant in the sum of $10,000 on their bill obligatory, bearing date on the 24th day of July, 1866, and being so indebted, did with their respective wives, on the same day execute a mortgage to secure the payment thereof, according to its terms; that the said bill obligatory provided, "that the said sum of money

should bear interest from the 12th day of July, 1866, at six per cent. per annum, and be payable annually from the said 12th day of July, 1866, and that if said interest should be punctually paid when the same falls due, the obligors should have five years from said 12th day of July, in said year, in which to pay the principal; but that if default should be made in the punctual payment of the interest, the whole principal should become due and demandable." The mortgage also contains a covenant to the same effect. The bill also charges the sale of the equity of redemption to the defendants, Schooley and Price, and the default in the payment of the interest. The bill was taken *pro confesso*, against all the defendants, but Schooley and Price filed answers admitting all the material allegations of the bill, and excusing themselves for the default, because the complainant resided in the city of New York, and was not accessible to them, and so far as they knew had no agent in Somerset county, and also, because of their ignorance of the contents of the mortgage. Evidence was taken by both parties, and the complainant's allegations fully proved. The complainant filed exceptions to certain portions of the testimony taken by the defendants, which exceptions we think were well taken, and the said testimony is accordingly ruled out; but inasmuch as it would have no bearing upon the case, in the view we take of it, further reference to it is unnecessary.

It was contended in argument by the defendants, Schooley and Price,

1st. That the non-residence of the complainant, and his not being accessible to them, as also their ignorance of the contents of the mortgage, constituted a sufficient excuse for their non-payment of the interest according to its terms.

2d. That being purchasers, they are not chargeable with any of the recitals or covenants in the mortgage, but only

with the breach of the condition, and that the condition being to pay the interest annually, and the principal in five years, has not been broken, except as to the interest, and can only be foreclosed to the extent of the breach.

3d. That the condition of the mortgage is in the nature of a penalty or forfeiture, and its breach will be relieved against in equity.

The residence of the complainant is stated in the mortgage to be in New York, and knowledge of it is also admitted in the answer. This of itself would negative the defence, but the facility with which he was found when actually inquired for, as shown by the testimony, indicates that it could as well have been done before as after the interest fell due, and makes it too plain for argument. Neither can they avail themselves of ignorance of the contents of the mortgage, because they expressly recognize its existence in the deed which they accepted from Peers and Richmond, and agreed to pay it.

If they did not read it, it was their own fault, and they must bear the consequences. We cannot assent to the second proposition of the defendants, so far at least as the recitals are concerned. The recitals constitute a statement of the form and terms of the indebtedness. It is from them we know the date of the instrument by which the debt is due, the time when interest begins to run, the time of payment, the condition and all the terms of the contract.

These recitals, if you choose to call them such, are the very foundation, the consideration of the mortgage, and the condition relates to them all. Thus in the mortgage in question the condition is, that if the mortgagors shall pay to the said John Romain "the annual interest on the said debt of ten thousand dollars, as and when the same shall be due and payable, and the said principal sum on the expiration of five years as herein set forth, &c." The very terms of the condition refer to all the preceding re-

citals and make them a part of it. There is no escape from this conclusion, and even without any reference to the mortgage, by the deed by which the defendants, Schooley and Price, hold the equity of redemption, they would take it *cum onere.* But when they themselves have recognized the existence of the mortgage, and undertaken to pay it, they can, with very little propriety, garble that instrument, and reject any part of it. By their own act, they have subrogated themselves to all the responsibilities of their vendors, and cannot escape from them.

But the third point raises the question, what is the extent of the responsibility of the mortgagors, and how far are they entitled to relief in equity against the consequences arising from the breach of their agreement? To the same relief, and no other are their alienees entitled. The agreement entered into between the parties was a very plain one, and its import cannot be misunderstood. They intended to give a credit of five years, but this credit was to be entirely dependent upon the punctual payment of interest annually.

It will not be contended that an agreement of this kind is repugnant to any principle of law. It must, therefore, be carried into effect, unless the condition is in the nature of a penalty or forfeiture, and intended to insure the punctual payment of the interest. It is conceded in argument, and is well established by the books, that if the extension of credit is made dependent upon the punctual payment of interest, there is no question but that the extension is lost by the non-payment of the interest, and equity will not relieve. But it is contended, that if credit is given, and is to be curtailed upon failure to pay the interest as stipulated, equity will relieve. This distinction, we think, is more fanciful than real, but even upon this theory, the agreement contained in this mortgage, by no fair construction will fall within the latter category. It will be observed, that in the obligatory clause of the bill, upon

which the mortgage is based, no time is fixed for the payment of the principal, but the interest is to be paid annually from a day named. It is then agreed that the principal sum "shall be due and payable on the expiration of five years from said day, provided the said annual interest shall be punctually paid when it falls due, but in default of such payment of interest, the whole of said principal shall be due and demandable." Here the extension of credit is expressly upon a proviso. The agreement first contains a promise to pay the principal, then a promise to pay the interest annually, and then a credit of five years, provided the second promise is punctually fulfilled, and superadded is a condition that upon default of such payment of interest, the principal and interest should be demandable. Language could not make the intention of the parties plainer. But in no aspect of the case can the condition of this mortgage be viewed in the light of a penalty or forfeiture, and as such, be relieved against in equity. The reasoning of the Court in the case of *Farris vs. Farris* and others, decided in the Supreme Court of New York, covers this point so fully, that we adopt it and apply it to this case. That was an action to foreclose a mortgage given to secure the payment of a bond upon a certain day, with the interest to be paid semi-annually; the bond and mortgage both contain the following clause: " That should any default be made in the payment of the said interest or any part thereof, on any day wherein the same is made payable as above expressed, and should the same remain unpaid and in arrear for the space of thirty days, that then the said principal sum of $2,477.50, with all arrearages of interest thereon, should at the option of the plaintiff become due and payable immediately thereafter." In this case also the equity of redemption had been sold, and the purchaser, who was a married woman, in her answer set up the absence of her husband and her own ignorance. The facts of the case were in all respects

very similar to the one now under consideration. In deciding the case, the Judge says: "It is urged that this is a forfeiture, and that equity will always relieve a party against a forfeiture. The plaintiff's claim is for the money secured by the bond and interest. There is nothing more claimed. The debtor owes the amount; he forfeits nothing; he is required to pay nothing but his debt; there is no forfeiture to be relieved; if the bond had been to pay the money in one year, with an agreement to extend the payment a second year, if the interest was paid within thirty days after it became due, no one would for a moment argue that there was any forfeiture, and yet that condition and the condition of the bond in suit are substantially the same. Nor can it be called a penalty; that is a sum named as damages to be recovered for violating an agreement or promise in lieu of damages."

There is no such thing here; no damages are called for. Merely altering the day of payment is neither a forfeiture of any property, nor a penalty in damages for the breach of any agreement. See *Farris vs. Farris*, 28 *Barbour*, 29; see also *Noyes vs. Clarke*, 7 *Paige's Ch. Rep.*, 179, where the same doctrine is announced by Chancellor Walworth.

The tender of the interest which was made in August, 1867, being after the same fell due, can have no effect to avoid the consequences of the breach of the condition.

In accordance with the foregoing opinion, the Court decreed the sale of the mortgaged premises, unless the defendants should, by a day named in the decree, pay to the complainant, or bring into Court, the sum specified, with interest from the date of the decree, until paid, together with the complainant's costs. From this decree the present appeal was taken.

The cause was argued before BARTOL, C. J., BRENT, MILLER and ROBINSON, J.

*A. H. Handy,* for the appellants.

The contract here shows a case of *penalty* or *forfeiture*.

Its character must be determined, not only from the technical force of the language employed, but from the circumstances of the whole transaction, which show the intention of the parties. *Kemble vs. Farren*, 6 *Bing.*, 141 ; *Adams' Eq.*, 108 (*margin*), 4 *Amer. edit. ; Seton vs. Slade*, 7 *Vesey*, 273.

In *Livingston vs. Thompson*, 4 *John. Ch. Rep.*, 431, Ch. Kent lays it down " as fundamental doctrine, that equity does not *assist* the recovery of a penalty or forfeiture, or *anything in the nature of a forfeiture.*" Forfeitures are odious in law, *Sander's vs. Pope*, 12 *Vesey*, 209, and it is a universal rule in equity not to *aid* in enforcing them. 2 *Story's Eq. Jur.*, sec. 1319.

It is clear that the clause of forfeiture was adopted *for the purpose of insuring the payment of the interest annually ;* and the settled doctrine is, that in such case, equity will relieve against the hard consequences of the forfeiture, whenever compensation can be made for failure of precise performance. *Slowman vs. Walter*, 1 *Bro. Ch. Rep.*, 419 ; *Walker vs. Wheeler*, 2 *Conn.*, 302; *Bowen vs. Bowen*, 20 *Conn.*, 134; *Mayo vs. Judah*, 5 *Munf.*, 495 ; *Brodwick vs. Smith*, 15 *How.* (*N. Y.*), *Prac. Rep.*, 434; *Tiernan vs. Hinman*, 16 *Ill.*, 400 ; *City Bank vs. Smith*, 3 *Gill & John.*, 281 ; 2 *Story's Eq. Jur.*, secs. 1315, 1316, 1321.

There was no default. The bond was not payable at any specified place. It describes the obligee as " of New York," but this is only *descriptio personæ*, and not an appointment of a place of payment. It was the duty of the appellee to make demand of the interest, or, at least, to be present at the place where the transaction took place, to receive payment ; and it was not incumbent on the appellants to go to New York to make payment. 7 *Bac. Abr. Tender, C. ; Buckner vs. Finley*, 2 *Peters*, 590 ; 2 *Story's Eq.*, note 6 to sec. 1315.

A demand or request of performance is not necessary,

unless there be an express stipulation for it in the contract, or *unless it be necessary, from the peculiar nature of the contract, that a demand be made.* *Chitty on Contracts*, 801 (*top*,) 10 *Amer. edit.* Here it was necessary from the nature of the case. The contract related to land here—the obligee resided in another State, and had no agent here—no place of payment was appointed—and the result of the forfeiture to the appellants was oppressive.

The appellants were not in default; and hence there was no forfeiture. And the bill should have been dismissed.

*Attorney-General Jones*, for the appellee.

Upon the question, whether the condition in the mortgage was in the nature of a penalty or forfeiture, the Court declined to hear the counsel for the appellee?

It is apparent from the language of the bond and mortgage, that the payment and notice mentioned in them were meant and intended to be made and given to the appellee, *at New York city;* that it was for this purpose that the residence of the appellee was specially mentioned. Peers and Richmond bound themselves and their heirs "to pay to John Romain, of New York city," the interest, and, upon notice, any part or all of the principal. Peers and Richmond were the only persons to whom the mortgagee had the right to look for payment, and they had removed from Somerset county to New York city, and were residing there for a year or more before the day of payment, so that the mortgagors and mortgagee both resided in the same city when payment fell due; and if the rule of law were as stated by the appellants, it did not apply in this case, the appellants not being obligors, nor mortgagors, but merely grantees of an equity of redemption.

There was no privity of contract between the appellants and the appellee. *Glenn's Exrs. vs. Canby*, 24 *Md.*, 130.

As purchasers of the equity of redemption, with full notice of the terms of the mortgage, and ten thousand dollars retained in their hands to be applied to it, it was by reason of their gross negligence only that they did not apply to the mortgagee in time; notify him of their purchase and readiness to pay the interest when due in order to secure the extension of credit. Their proof contradicts their answer, and shows that they were not *ready to pay.* 7 *Wallace,* 447. And they do not pretend that they gave any notice of their purchase to Romain; or made any inquiry of Romain, whether he had an agent in Somerset to receive the interest when due. The proof shows that he had an attorney in Somerset, authorized to act for him.

The bill in this case is a proceeding *in rem,* to subject the pledged security to the payment of the debt. If the mortgagee had brought ejectment, equity could not have interfered. A mortgagee cannot be put to his election, but may pursue all his remedies, at law and in equity, at the same time. 1 *Md. Ch. Dec.,* 87; 2 *Md. Ch. Dec.,* 322. The appellants, at the time of their purchase, took the legal estate, subject to the mortgage. The legal estate became *forfeited* in their hands. This is the only *forfeiture* in the case, against which equity can relieve. They may redeem the *forfeited legal estate,* on payment of the mortgage debt, interest and costs.

BARTOL, C. J., delivered the opinion of the Court.

Upon the question of the construction of the mortgage, and the bond or obligation of Richmond and Peers, to enforce the payment of which this bill was filed, we entirely agree with the Circuit Court, and upon the reasoning contained in the opinion of that Court, sent up with the record, and the authorities therein cited, we are willing to rest our decision of that question. The object of the suit is to enforce the payment of the mortgage debt and in-

terest, according to the terms of the contract; it is in no sense a proceeding to enforce a penalty or forfeiture.

We agree also with the Circuit Court in the opinion that the appellants, as assignees of the equity of redemption, took the land subject to the mortgage, and the covenants therein, which may be enforced against the land in the same manner and to the same extent as if the assignment had not been made.

The only remaining question is, was there a default in the payment of the interest?

It became due on the 12th day of July, 1867.

On the part of the appellants it has been contended that the contract was to be performed where it was made, in Somerset county, Maryland; that the appellee resided in New York, and had no agent in Somerset county authorized to receive the money, and that they were not bound to pay or tender the money in New York, where alone the appellee was to be found.

Assuming for the sake of the argument that this position is correct, the appellants were bound to show that they were ready to pay the interest when it fell due.

It is averred in their answers that they were so ready; but this averment is entirely unsupported by the proof; on the contrary, the evidence shows that they were not ready with the money to pay the interest, *at any place,* when it became due; their default is without sufficient legal excuse, and the right of the appellee thereupon to demand the payment of the principal, according to the terms of the covenant, cannot be questioned.

The decree of the Circuit Court must be affirmed with costs to the appellee.

*Decree affirmed.*

(Decided 22d December, 1869.)