# CHARLES F. WARING

*vs.*

# THE NATIONAL SAVINGS & TRUST COMPANY, ET AL.

*Tax Sale—Purchase by Mortgagor's Assignee—Covenants Running with Land—Advertisement by County Treasurer—Right of Redemption.*

In considering a demurrer to the bill, all allegations properly pleaded in the bill are assumed to be true.  p. 372

Allegations of fraud may be disregarded if they relate to fraud practiced on one not a party to the suit.  p. 373

A mortgagor or his assignee, in possession of property, the taxes upon which he is bound by the covenants of the mortgage to pay, cannot, at a tax sale held in consequence of a breach of his duty to pay taxes, acquire a title to the property free from the lien of the mortgage.  p. 373

A covenant by a mortgagor to pay taxes runs with the land and is binding upon all persons becoming the owners thereof claiming under the mortgagor.  p. 374

Acts 1902, ch. 469 (Prince George's County, Pub. Loc. Laws, 1912, sec. 225), referring to the sale of land to the County Commissioners of Prince George's County for taxes, gives a right of redemption from such sale until payment therefor is made to the county treasurer.  p. 375

If the owner of land, being bound by the covenants of a mortgage thereon to pay the taxes, fails so to do, and the land is consequently sold for taxes, and, while having by statute the right to redeem from such sale, he conveys the land to another, who consequently succeeds to such right of redemption, and also to the duty to pay the taxes, a purchase by such other from the county, to which the property has been forfeited by reason of the non-payment of subsequent taxes, amounts only to a payment of these taxes, and such last grantee does not thereby acquire a title free from the mortgage.  p. 376

The statute (Prince George's County, Pub. Loc.. Laws, 1912, sec. 218) requiring the county treasurer to advertise each piece of property separately, and to describe each property in such a manner as to identify it or to indicate how it could be identified with reasonable certainty, and to indicate the amount of taxes due against "each piece" of property, *held* that an advertisement which joined two lots owned by different persons, and stated the aggregate amount due on both lots, without stating the amount separately due on either, and, while referring to improvements, did not indicate whether they were on both lots or on one, was insufficient, and the sale was invalid.     pp. 377, 378

That, in a bill to enforce the lien created by a mortgage deed of trust, the court is asked to declare a tax deed void as against the trustee and the holder of the mortgage notes, does not make it a bill *quia timet*, so as to require the plaintiffs to show title and possession, the relief asked as to the tax deed being merely subsidiary and ancillary to the principal object of the suit.

p. 379

On a bill to enforce the lien created by a mortgage deed of trust, brought by the surviving trustee and the holder of the mortgage notes, to which one claiming a title paramount under a tax deed, who was also the successor in title of the mortgagor, was made a party, *held* that the court, having jurisdiction of the subject-matter and having before it all persons interested, can and should finally and completely adjudicate their relative rights and the extent of their respective interests.

pp. 379, 380

The rule that the claimant of an adverse or paramount title cannot be brought into a suit to foreclose a mortgage does not apply when such claimant is also a privy in title with the mortgagor and as such necessarily in court.          p. 380

The defense of laches *held* not applicable, under the facts of the case, to a proceeding to foreclose a mortgage or to enforce the lien of a mortgage deed of trust, which was begun within the statutory period of limitations.          p. 380

*Decided April 8th, 1921.*

Appeal from the Circuit Court for Prince George's County, In Equity (BEALL, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, ADKINS, and OFFUTT, JJ.

*S. Marvin Peach* and *M. Hampton Magruder*, with whom were *Wells & Owens* on the brief, for the appellant.

*Charles W. Claggett*, with whom was *Joseph C. Mattingly* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the court.

On May 19th, 1911, Samuel W. Pickford and Katie W. Pickford, his wife, executed a mortgage deed of trust on a lot of ground in Hyattsville, Prince George's County, to Millard Metzger and Andrew R. Benson, trustees, to secure the payment of a loan of $1,500, made by Millard C. Metzger to Samuel W. Pickford, according to the terms of two promissory notes bearing even date with the deed and payable three years after date. At the time this suit was instituted Millard Metzger, the trustee, and Millard C. Metzger, the payee named in said notes, were both dead. Letters testamentary had been granted on May 18th, 1917, on the estate of Millard C. Metzger, in the District of Columbia, to the National Savings & Trust Company and Nathan H. Metzger, who was also dead at the time the bill of complaint in this case was filed, so that at that time the trustees were represented by Andrew R. Benson, the surviving trustee, and the estate of Millard C. Metzger by the National Savings & Trust Company, the surviving executor.

The deed contained a provision authorizing the mortgagors to remain in possession of the mortgaged property until a default occurred under it, and the covenants usually found in such an instrument, including a covenant to pay "all taxes upon the said land."

On July 19th, 1912, the grantors named in the deed of trust conveyed the property to Isaac H. Radford, subject to

the operation of said deed, and on February 26th, 1914, Radford and Anna Radford, his wife, conveyed it to Frederick W. Youmans of Delhi, N. Y., subject to said deed of trust, and on May 8th, 1918, Frederick W. Youmans conveyed it by a quit claim deed to Charles F. Waring, the appellant.

In the meantime the state and county taxes on the property for the year 1914 became due and in arrear, and on the first Monday in March, 1915, the property was sold, for the taxes so due and in arrear, to the County Commissioners of Prince George's County, and on September 24th, 1917, said property was again "sold" with "all property then owned by" said county to the said County Commissioners, for "taxes, interest, penalties and costs due the said state and county for "taxes for the years 1914, 1915, 1916, 1917, amounting in all" to $107.98, and on May 7th, 1918, the said County Commissioners ordered the land sold to Charles F. Waring, the appellant, for the "taxes, interest, penalties and costs for taxes" due for the years 1915 to 1918, inclusive, and on May 21st, 1918, thirteen days after he had taken a deed for the same property from Youmans, Waring took a deed for it from the treasurer of Prince George's County, executed in pursuance of the said order of the said County Commissioners. Prior to April 22nd, 1918, Waring, in negotiating for the purchase of the property in a letter to Youmans, offered him $50 for it, and explained the offer by representing that the property was in bad repair, that there was a "trust" on it for $1,500, with accrued interest since 1911, and as a result of these representations Youmans executed the quit claim deed for $50.

After the execution of these two deeds Waring claimed to own the property by title paramount, clear of any lien or incumbrance created by the deed of trust. The appellees thereupon filed this bill to enforce the lien of the mortgage deed of trust, and to have the tax deed declared void as against

the appellees, on the ground that it was fraudulent as against them.

In addition to the facts which have been stated, the bill alleged that the deed from the treasurer of Prince George's County to Waring was fraudulent and void as to the appellees for reasons which may be thus summarized: (*a*) That prior to the execution of said deed Waring was the equitable owner of the land described therein and as such was bound to pay the taxes, interest, costs and penalty accrued against the same and to redeem it from the tax sale; (*b*) that the covenant to pay taxes contained in the deed of trust ran with the land and bound all subsequent owners thereof including Waring; (*c*) that under the deed of trust the land was re-demised to the grantors named therein, and that in consequence thereof said grantors, their heirs and assigns, and especially Waring, occupied a position of trust and confidence in their relation to Millard C. Metzger and his personal representatives, and became the tenant of said land so far as the appellees were concerned, and as such were bound to pay the taxes and public dues and charges thereon and redeem it from the tax sale; (*d*) that Waring under his contract with Youmans "assumed the payment of the money secured by said deed of trust" and the interest thereon, and that the deed from Fuller (the treasurer) to Waring prevented the appellees from enforcing that lien; (*e*) that when Waring recited, as an inducement to Youmans to sell the property for $50, that he, Waring, would have to pay the sum of $1,500 with interest from May, 1911, "he contracted and agreed with said Youmans to pay to the legal holder of said deed of trust" said sum, and (*f*) that Waring when "he made said contract to purchase said real estate for $50, and recited therein that said property would stand him $1,500 with interest from 1911" constituted said property a trust fund to pay to the owners of said deed of trust such sums.

It was further alleged that the tax deed was void because of defects in the proceedings culminating in the tax sale.

372       WARING vs. NAT'L SAV. & T. CO.

Opinion of the Court.                    [138

These supposed defects were, that the treasurer, in advertising the property at tax sale, did not sufficiently identify it or state the amount of taxes due thereon. It was also stated that no part of the principal or interest of the debt secured by the deed of trust had been paid.

The appellant demurred to the bill of complaint on the grounds that it failed to state a case for equitable relief and that there was no privity between the parties. The court passed an order overruling the demurrer and from that order this appeal was taken.

If we assume, as we must, in considering the demurrer, that all allegations of fact properly pleaded in the bill are true (*Outlaw* v. *Outlaw,* 118 Md. 498), the situation of the parties appears to be clear enough. After the execution of the deed of trust, the grantors or their assigns permitted the property to be sold for taxes. It appears to have been worth at that time little more than the accrued taxes and charges incidental thereto, and the principal and interest of the mortgage debt. Waring wanted the property, but he wanted it clear of the mortgage; so in negotiating with Youmans for its purchase he treated the deed of trust as a valid and existing lien, in order that Youmans would thereby be induced to deduct the amount of the debt secured by the deed of trust from the actual value of the property in fixing the purchase price. Youmans, who appears from his deed to have resided in New York, in consequence of these representations, did sell the property to Waring for $50, which represented the value of his equity as appraised by Waring if the deed of trust was in fact still a subsisting lien. Waring, after having bought the property on that basis, denied that the deed of trust was a valid and subsisting lien, on the ground that all the interest which the lienors had in the property had been acquired by the County Commissioners of Prince George's County from whom he had taken title. If he successfully maintained that contention, as a result of the devious processes by which he acquired the property, his profit from the

transaction would be the amount of the debt and interest secured by the deed of trust.

The substantial questions before us therefore are whether Waring acquired from the treasurer of Prince George's County a title to the property in question free from any lien or incumbrance arising under the deed of trust, and if he did not are the appellees entitled to the particular relief which they pray in their bill.

In considering these questions the allegations of fraud contained in the bill may be disregarded as immaterial, since the appellees' right to relief, if it exists at all, must rest upon other grounds, because all the allegations designed to show fraud relate to a supposed fraud practised, not upon the appellees, but upon Youmans, the holder of the equity of redemption, who is not a party to the suit.

Before considering the legal effect of the allegations of fact contained in the bill, we will state briefly the rules of law applicable to and controlling them.

That a mortgagor or his assignee in possession of property, the taxes upon which he is bound by the covenants of the mortgage to pay, cannot at a tax sale held in consequence of a breach of his duty to pay taxes, acquire a title to the property free of the lien of the mortgage, is a principle which is generally recognized, and which has been thus stated, "the mortgagor remaining in possession of the land owes to the mortgagee a duty to keep down the taxes; and the law would justly be chargeable with connivance at fraud and dishonesty, if a mortgagor might be suffered to permit the taxes to become delinquent and then discharge them by a purchase which would at the same time extinguish his mortgage. There is a general principle applicable to such cases which may be stated thus: 'That a purchase made by one whose duty it was to pay the taxes shall operate as a payment only; he shall acquire no rights as against a third party by a neglect of the duty which he owed to such party.' " 3 *Cooley, Taxation*, 965. And the same principle is stated in slightly dif-

ferent language in 26 *R. C. L.,* p. 412, where it is said: "It
is a general principle of law that one who is under an obliga-
tion to pay taxes on lands, such as a co-tenant, a lessee, a life
tenant, a mortgagor or a mortgagee, cannot strengthen his
title thereto by buying in the tax title when the property is
sold as a consequence of his omission to make such payment."
This principle was recognized and applied by this Court in
the case of *Oppenheimer* v. *Levi,* 96 Md. 304. It is true
that that was a case of landlord and tenant, but the duty
owed by the tenant to pay the taxes to which the court re-
ferred there cannot be distinguished in principle from the
duty owed by a mortgagor to pay taxes levied on the mort-
gaged property, where the obligation to pay them rests upon
one of the covenants of the mortgage. 37 *Cyc.* 1346. Such
a covenant runs with the land and is binding upon all per-
sons becoming the owners thereof claiming under the mort-
gagor, under the rule announced in *Barron* v. *Whiteside,* 89
Md. 458, in which this Court, in referring to a similar cove-
nant, said: "In each of Mrs. Barron's mortgages there was
a provision that until default was made the mortgagor might
hold and possess the premises, and receive the rents and
profits thereof, upon paying in the meantime the ground rent
and all taxes on the premises; and there was an express cove-
nant by the mortgagor for himself and his assigns to pay the
same when legally demandable. This covenant runs with the
land and binds the appellee. *Mayhew* v. *Hardesty,* 8 Md.
495; *Worthington* v. *Cooke,* 52 Md. 309." And in *Schooley*
v. *Romain,* 31 Md. 574, this Court, in speaking of the obli-
gations resting upon the grantee of land encumbered by a
mortgage, said: "We agree also with the Circuit Court in the
opinion that the appellants, as assignees of the equity of re-
demption, took the land subject to the mortgage, and the cove-
nants therein, which may be enforced against the land in the
same manner and to the same extent as if the assignment had
not been made." See also *Thomas* v. *Von Kapff,* 6. G. & J.
381; 15 C. J. 1252. Assuming then that the covenant to pay

taxes ran with the land and was binding upon all owners thereof claiming title under the mortgagor, it is apparent that Waring could not, by buying the land at a tax sale, held in consequence of the failure of some holder of the equity of redemption therein to pay the taxes due thereon, destroy the right of the mortgagee to enforce the lien of the mortgage against it, if Waring at the time he took the tax deed from the treasurer of Prince George's County was himself the holder of the equity of redemption therein, but at most he could only become "seised under the tax deed in trust" for the mortgagees. *Lansburgh* v. *Donaldson,* 108 Md. 692.

But it is contended that Waring was not at the time he took the tax deed the holder of the equity of redemption in the property, because when Youmans conveyed the property to him, he, Youmans, had nothing to convey, since whatever interest he had in the property had been forfeited to Prince George's County. But an examination of the Public Local Laws of Prince George's County shows that, up to the time Waring took the tax deed therefor, he as the holder of the equity of redemption had a statutory right to redeem the property.

Section 116G, Article 17, Code Pub. Loc. Laws, as enacted by Chapter 469 of the Acts of 1902, being Section 225 of said laws as at present codified, referring to the sale of land to the County Commissioners of Prince George's County for taxes, in part provides that no property offered at tax sale shall be sold for less than the total taxes, interest, penalties and costs of sale for which it is listed and, if no such bid is received, it shall be sold to said County Commissioners, in which case it shall remain on the assessment books of the county, and be taxed as other properties thereon, but not be resold at the succeeding annual tax sales; that if the property sold at such sale is not redeemed within two years a fee simple title to it shall vest in the said County Commissioners; it then provides that "after each period of forfeiture" the treasurer of said county shall make up and advertise a list of

all such forfeited properties and offer them for sale, and if no bid for at least the amount of the taxes, interest, penalties and costs of sale for which it is then liable is received, the property shall be withdrawn from public sale, and that thereafter said County Commissioners are authoried to sell the same at public or private sale for such price as they deem advisable; and that "upon payment of the whole purchase money for any parcel of forfeited real estate sold as aforesaid, and not before, to the treasurer," he shall execute to the purchaser a deed in fee simple for the property; and then follows this provision:

"But the owner or owners of any parcel of real estate forfeited or forfeited and sold as hereinbefore provided, may at any time prior to the actual payment of the purchase money for such parcel of real estate by the purchaser, then pay to the treasurer for the time being the total of all taxes, interest, penalties and costs of sale, due and accrued to date, on account of, upon and against such parcel of real estate, and thereupon such forfeiture or forfeitures and sale shall cease to be of any force and effect and become null and void, and such owner or owners shall become revested of his, her or their former right, title, claim, interest and demand at law or in equity of, in and to such parcel of real estate; the right of redemption hereby given shall apply to any and all forfeiture or forfeitures and sales of real estate whether heretofore occurred or hereafter to occur * * * ."

Under this statute Youmans at the time he conveyed the property to Waring did have the right as the owner of the property to redeem it from the tax sale to the County Commissioners (because Waring had not then paid to the treasurer the purchase price therefor), and under the covenants of the deed of trust it was his duty to do so, and as a result of the conveyance to him, Waring succeeded both to such right and such duty. And since Waring at the time he took the tax deed was under a legal obligation to the holder of the

WARING vs. NAT'L SAV. & T. CO.      377

Md.]                    Opinion of the Court.

mortgage to pay the taxes on the property described in it, in our opinion his purchase from the County Commissioners only amounted to a payment of taxes then due thereon, and he acquired thereby no rights against the appellee. *Lansburgh* v. *Donaldson,* 108 Md. 692. But there is another reason why Waring did not acquire under the tax deed any title to the property superior to the interest of the appellees therein, and that is, that the sale of the property to the County Commissioners of Prince George's County was itself invalid and in consequence no title to it ever became vested in said Commissioners. Section 218, Pub. Loc. Laws, Prince George's County (1912), in providing for the sale of property for taxes in default, requires the treasurer of the county to publish a list containing the names of the owners of each piece of such property to be sold as they appear on the assessment books, and where such property has changed hands, the names of the present owners thereof, if they are known to the treasurer, the location of the property by district, the quantity of land it contains and other matters of description that may be known to the treasurer and the amount of taxes in default with the interest and penalties accrued and to accrue to the day of sale "upon each piece of said real estate."

The objects of such a requirement were said by this Court, speaking through JUDGE McSHERRY in *Richardson* v. *Simpson,* 82 Md. 160, to be "first to apprise the owner of the property intended to be sold that a proceeding is pending which unless arrested by the payment of the tax will divest him of his property; and secondly to apprise persons desirous of purchasing, so they may know the particular property to be sold. If both or either of these objects be defeated by the form of the advertisement or by the description which it gives of the property, then obviously, the designs of the law in requiring public notice to be given have not been subserved; the proceeding is irregular, and the sale if made will be void." The property in question is known as Lot 3, Block 4, in Warner's sub-division of Pettit's Addition to

Hyattsville, on Sheridan Avenue, and contained improvements. At the time it was advertised at tax sale in 1915, it, with other lots, was assessed to Isaac H. Radford, of Toronto, Canada, but was actually owned by Frederick W. Youmans, who had taken it under a deed from Radford, dated February 25th, 1914, and recorded on March 7th, 1914. Such being the situation of the property, the treasurer of Prince George's County advertised it for sale for taxes in default, in this form: "Radford, Isaac H., Lots 3, 4 and imp., blk. 4, Pettit's Add'n (present owner of Lot 3, blk. 4, Frederick W. Youmans), Liber 91, folio 29, Liber 84, folios 350-351, taxes, int., pen. and costs $31.81." This advertisement certainly was not in accordance with the terms of the statute, and was singularly misleading and confusing. It neither sufficiently identified the property nor stated the amount of taxes due on it, because it joined Lot 3, which Youmans owned, with Lot 4, in which he had not and never had had any interest, and stated the aggregate amount of taxes assessed against both lots, but did not state the amount separately due on either, and while it referred to improvements on Lots "3 and 4" it did not indicate whether such improvements were located on both lots, or if not, then on which lot they were located.

Under the statute the treasurer was required to advertise and sell each piece of property separately, and in the advertisement to describe each property in such a manner as to identify it or indicate how it could be identified with reasonable certainty, and to indicate the amount of taxes due against "each piece" of property. These requirements are jurisdictional, and compliance with them is "essential before the treasurer is empowered to sell the property at all." *Richardson* v. *Simpson*, 82 Md. 155; *Baumgardner* v. *Fowler*, 82 Md. 631; *3rd Ed. Cooley on Taxation*, 928. And since they were not complied with the treasurer had no power to sell the property.

The second question presented by this appeal is whether, even assuming that Waring took nothing under the tax deed, the appellees are entitled to the relief prayed in their bill.

This is not a technical suit to quiet title, but is a proceeding to enforce a lien created by a mortgage deed of trust, which is in default. It is true that the court is asked to declare the tax deed void as against the trustee and the holder of the mortgage notes, but that relief is subsidiary and ancillary to the principal object of the suit—the enforcement of the lien created by the deed of trust. The cases cited to support the well settled rule that to maintain a bill *quia timet* the plaintiffs must show title and possession, are therefore not in point, and it becomes unnecessary to consider whether the facts of this case fall within any exception to the rule such as that stated in the class of cases of which *Oppenheimer* v. *Levi,* 96 Md. 296, is an example.

There can be no question that Waring, as the holder of the equity of redemption in the property, is a proper and necessary party to the suit (*Miller's Equity,* Par. 63) ; nor that the enforcement of the lien created by the deed of trust is a proper subject of equitable jurisdiction, nor that the plaintiffs, being the surviving trustee named in the deed of trust, and the holder of the mortgage notes, are proper parties plaintiff. *Miller's Equity Procedure,* Par. 62. The court therefore having jurisdiction of the subject matter, and having properly before it all persons interested therein, should decide all the issues and award complete relief, so as to settle the whole controversy between the parties as to the subject matter of the suit. *Ibid.,* Par. 264; *3rd Ed. Pomeroy Equity Jur.,* Par. 231-234.

Applying these principles to the facts before us, in our opinion the appellees are entitled to the relief prayed in the bill. The primary purpose of the suit is the enforcement of the lien created by the deed of trust. The appellant, who claims to hold under the tax deed a title paramount to that of the appellees, is also the successor in title of the mort-

gagor, and in that capacity a necessary party to the cause, and the court, having jurisdiction of the subject matter and having before it all persons interested in it, can and should finally and completely adjudicate their relative rights and the extent of their respective interests therein.

This case is to be distinguished from that class of cases, a number of which are collected in 19 *R. C. L.* 520, in which it is held that the claimant of an adverse or paramount title cannot be brought into a suit to foreclose a mortgage on the property to which he claims title, because in this case the claimant of the hostile or adverse claim is also a privy in title with the grantor in the deed of trust and as such necessarily in court.

The defense of laches, suggested in the appellant's brief, cannot under the facts of this case be properly applied to a proceeding to foreclose a mortgage or enforce such a lien as that in issue here, and which has been begun within the period of limitations fixed by the statute.

For the reasons given the order appealed from will be affirmed and the cause remanded.

> *Order affirmed and cause remanded, with costs*
> *to the appellee.*