JOHN P. McNALLY ET AL. *v.* EMMA DIEHL RINN
[No. 43, October Term, 1935.]

*Decided December 5th, 1935.*

The cause was argued before BOND, C. J., URNER, OF-FUTT, PARKE, SLOAN, MITCHELL, and JOHNSON, JJ.

*Jere J. Santry,* for the appellants.

*Benjamin H. McKindless,* with whom were *Jacob M. Moses* and *Paul L. Cordish* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

In a bill of interpleader, filed by the Central Savings Bank of Baltimore, it was alleged that a deposit account in the bank to the credit of Daniel F. Rinn, in the amount of $1,310.12, was transferred, on March 9th, 1934, to a new account then opened in the name of "Daniel F. Rinn in trust for self and M. Emma Diehl, joint owners, subject to the order of either, the balance at death of either to belong to the survivor"; that during the same month Daniel F. Rinn died, and letters of administration upon his estate were granted to Emma Diehl Rinn, whose maiden name was Emma Diehl, and who informed the complainant that she had married Daniel F. Rinn; that demand was made by her upon the complainant for the payment to her of the balance credited to the account referred to, but that claims to the account were also made by John P. McNally and Maurice J. McNally, as nephews and next of kin of Daniel F. Rinn, deceased; that the complainant was unable to decide between the conflicting claims to the account, in which it had no interest except to pay the credit balance to the owner or owners, and that it desired to pay the fund into court pending a judicial determination as to its ownership. The prayer of the bill was that Emma Diehl Rinn, individually and as administratrix of the estate of Daniel F. Rinn, on the one part, and John P. McNally and Maurice J. McNally, on the other part, should be directed to interplead as to their respective claims to the fund in dispute, and that in the meantime they should be enjoined from instituting any

action at law in reference thereto against the complainant.

By an order of the Circuit Court of Baltimore City, whose jurisdiction was thus invoked, the complainant was authorized to pay into court the fund in controversy, less $25.70 as the accrued costs of the proceeding, and $75 as a fee for its solicitor in the case, and the claimants of the fund were required to interplead, Emma Diehl Rinn, individually, being designated as plaintiff for that purpose, and John P. McNally and Maurice J. McNally, and Emma Diehl Rinn, administratrix, as defendants. In pursuance of that order the opposing claims were duly interpleaded. The fund was claimed by Emma Diehl Rinn under the terms of the deposit. The interpleading answer of John P. McNally and Maurice J. McNally alleged that when the deposit account of Daniel F. Rinn was changed, on March 9th, 1934, from his individual name to that of Daniel F. Rinn in trust for himself and Emma F. Diehl, there was a confidential relationship of the latter to the depositor which continued until his death a week subsequently; that for "a considerable length of time" prior to March 9th, 1934, Daniel F. Rinn resided at the home of M. Emma Diehl, who had such influence over him, in his "weakened condition both mentally and physically," resulting from a disease which caused his death on March 16th, 1934, that she "succeeded within one week of his death" "in inducing him to sign a paper transferring said bank account to a joint account for herself and himself; and in inducing him to marry her"; and that during the period of the transfer and marriage, and until his death, Daniel F. Rinn "was incapable of making a valid deed, contract or will." It was therefore claimed by those respondents that the fund in question is properly an asset of the estate of Daniel F. Rinn, deceased, and distributable to them as his heirs and next of kin.

During the progress of the hearing in the Circuit Court the parties, with the encouragement of the court, effected a compromise. The terms of the settlement were expressed in a written agreement, signed by them and

witnessed by their counsel, in the following form: "The case of Central Savings Bank of Baltimore vs. Emma Diehl Rinn, and others, bill of interpleader, coming on for hearing this 12th day of February, 1935, before the Circuit Court of Baltimore City, it is agreed that Emma Diehl Rinn will pay to John P. McNally and Maurice J. McNally the sum of $1,500.00 & Court costs within one week from date in consideration of which said John P. McNally and Maurice J. McNally will and do hereby jointly and severally agree to release the said Emma Diehl Rinn from all and any claims, suits or actions arising out of any bank accounts, assets, or personal property standing in the joint names of said Daniel F. Rinn and Emma Diehl Rinn in trust or in any other manner, or for any monies drawn from any bank accounts in the name of Daniel F. Rinn or in the joint names of Daniel F. Rinn and Emma Diehl Rinn; the said parties hereto further agree that all funds in the estate of Daniel F. Rinn, pending in the Orphans' Court of Baltimore City, shall be distributed as provided by law to Emma Diehl Rinn as the lawful widow of the deceased, and Maurice J. McNally and John P. McNally as the heirs at law of said deceased, and that the latter parties do hereby agree not to attack the validity of the marriage, directly or indirectly, between Emma Diehl and Daniel F. Rinn on the 14th day of March, 1934."

There having been a refusal by John P. McNally and Maurice J. McNally to fulfill the compromise agreement by executing, in accordance with its terms, a release submitted for their signatures, with a proffer of the stipulated payment of $1,500, a petition was filed by Emma Diehl Rinn in the interpleader case for the purpose of having the agreement effectuated. To that petition separate answers were filed by the respondents without the co-operation of their counsel. In the answer of Maurice J. McNally the only objection specifically stated for his refusal to sign the proposed release was that it recited a consideration of one dollar, but made no reference to the payment of $1,500, as the agreement provided. The

reason assigned by John P. McNally, in his answer, for not signing the release, was that when he signed the agreement "the whole amount involved" was represented to be $6,000, which he had since learned to be much less than the real amount involved, and that both his attorney and the court had been misinformed on the subject.

At the hearing on the petition to enforce the compromise agreement there was testimony proving the signatures of the parties, the refusal of the respondents to consummate the settlement, and an offer to have the required release mention the $1,500 payment as the actual consideration for its execution. It was proved that the payment was proffered, and the release presented to the respondents, within the period prescribed by the agreement, and that during the same period the petitioner paid the court costs, amounting to eighty-two dollars. The testimony of the respondents, which apparently was given in disregard of the attitude of their counsel, Mr. Lawrence and Mr. Kalben, afforded no substantial ground for a conclusion that the compromise was induced by misrepresentation or that there was any valid reason why its purpose should not be accomplished. The court below, at the close of the hearing, addressed the respondents as follows: "When this case came on for trial, at my suggestion you and your counsel, and the other side and their counsel, conferred with one another, and agreed on a settlement of your differences, and before the parties left the building that agreement was reduced to writing and signed by all parties in interest. The papers that have been offered you in pursuance of that agreement for your signature, the releases, etc., are in exact accordance with the terms of the agreement that you made. The specification in the release of the sum of one dollar and other valuable considerations is a formal matter, and is not unusual. In fact, it is the usual way, but I understand from the other parties that they are quite willing to amend the release and let it show the true consideration of $1,500, and if that will make you feel better satisfied, I direct them to put that in it. You were repre-

sented by able and honest counsel. No suggestion has been made that you have been misled in any way, or that your counsel have been in the slightest degree false to their trust. Therefore, as I said before, the Court will sign an order requiring you to sign the releases, carry out the settlement that you made here in the court room, and if you do not do it the Court will appoint some one else to do it for you."

The order appealed from directed the respondents, John P. McNally and Maurice J. McNally, to sign and deliver a release to Emma Diehl Rinn in accordance with the agreement of February 12th, 1935, a copy of the release required of them being annexed to the order, and a trustee was appointed to execute and deliver such a release "in their name, place and stead" in the event of their refusal to sign it, and the petitioner Emma Diehl Rinn was directed, upon the execution and delivery of the release, to pay the sum of $1,500 to the clerk of the court to the credit of the cause, subject to the court's further order. It was also directed that upon the execution and delivery of the release and the prescribed payment of $1,500, the clerk should pay to Emma Diehl Rinn the sum of $1,219.20, then on deposit with the clerk to the credit of the cause, being the amount of the interpleaded fund after the deduction of the costs and counsel fee previously allowed. The respondents were restrained by the order from "instituting or prosecuting any action at law or in equity in respect to any sum of money, assets or property mentioned or referred to" in the agreement of compromise, and from "attacking, directly or indirectly, the validity of the marriage between the said Emma Diehl and Daniel F. Rinn." It was further ordered that "this proceeding be entered 'satisfied' as to any cause of action against the said Emma Diehl Rinn, individually or as Administratrix of the Estate of Daniel F. Rinn, deceased." The form of release attached to the court's order contained a formal relinquishment of any right or claim of the respondents to any bank account or other assets held in the names of Daniel F. Rinn and M. Emma

Diehl, or in trust for them or either of them, or for the survivor of them, and included a stipulation that the respondents should not question or attack the validity of the marriage of Daniel F. Rinn and M. Emma Diehl, "and that all funds in the estate of said Daniel F. Rinn, deceased, shall be distributed according to law."

The principal contention on behalf of the appellants is that the Circuit Court had no authority to pass a restraining order in this case, except in regard to the fund originally involved in the interpleader suit. There could be no doubt as to the power of the court to enforce in the equity suit relating to that fund a valid agreement of the parties for its disposition. Having jurisdiction of the parties and the subject of the litigation, it was clearly competent for the court to decree a termination of the case in accordance with relevant terms of settlement upon which the parties themselves agreed. *Reed & Fibre Products Corporation v. Rosenthal,* 153 Md. 501, 138 A. 665; *Scott v. Marden,* 153 Md. 1, 137, A. 518; *Boland v. Ash,* 145 Md. 465, 125 A. 801; *Young v. Diedel,* 141 Md. 670, 672, 119 A. 448; *Jenks v. Clay Products Mfg. Co.,* 138 Md. 551, 572, 115 A. 123; *Waring v. National Savings & Trust Co.,* 138 Md. 367, 379, 114 A. 57; *Linthicum v. Washington, B. & A. Electric R. Co.,* 124 Md. 263, 92 A. 917. 12 *C. J.* p. 361. If the dispute as to the ownership of the bank deposit involved in the interpleader suit had not been compromised, the trial would have proceeded and the question of title would have been judicially determined. The compromise of the case obviated that alternative by substituting the agreed upon result for an adjudication after further contest. In thereafter disposing of the litigation the court was authorized to adopt the agreement of the parties, in lieu of evidence which was thereby rendered unnecessary, as a basis for the order required to bring the case to a conclusion.

The claim of the appellee, Emma Diehl Rinn, to the bank account specified in the bill of interpleader was opposed by the appellants on the asserted theory that the transfer of the account to the joint names of herself and

Daniel F. Rinn, the depositor, and also her marriage to him, were induced by her when he was incapable of making a valid contract. If they had continued to press and had sustained that ground of opposition to the appellee's claim, the effect upon her interests would have been not simply to defeat her claim to the bank deposit as surviving joint beneficiary of the trust declared in the deposit entry, but also to jeopardize, if not destroy, her right to participate, as widow of Daniel F. Rinn, in the distribution of the fund as an asset of his estate. It is evident from the terms of the compromise settlement that there were other funds, held in the names of the appellee and Daniel F. Rinn, jointly, which were exposed to the same controversy as the one from which this suit resulted. There are also apparently assets which he held separately and which are distributable to those entitled to his estate in due course of administration. A distinction is made between the joint and separate assets by the agreement of compromise and in the release for which it and the court's order made provision. The right of the appellants to share in the separate funds of the decedent is recognized and preserved by the agreement and the release, but they are obligated to refrain from questioning the appellee's title, by survivorship, to the joint assets and her right to share in the separate funds as the decedent's widow. In conformity with the agreement of the parties, negotiated and executed with the aid of their counsel, the order appealed from provided with unquestionable validity that the interpleader fund should be paid to the appellee in consideration of her payment of $1,500 to the appellants in full satisfaction of their claim to share in any of the assets which she and the decedent held jointly. Since the consideration of her agreement to pay the appellants $1,500 included their promise not to dispute her marriage and her consequent right as widow to share in the decedent's separate estate, the appellants would be estopped to renew such a controversy even if the court's order had made no definite provision to that end. The court's clearly valid enforcement of the agreement to the

extent of the stipulated payments and release effectually precludes a renewal of any of the compromised contentions, and, therefore, the criticised injunctive clause of the order was unessential, and the question as to the propriety of its inclusion may be regarded as immaterial.

All other questions raised in the brief for the appellants are sufficiently answered by the expression of our views as to the effect of the agreement and the proposed release, and as to the absence of any proof upon which the compromise could properly have been invalidated.

*Order affirmed, with costs.*